| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 9.2 | March 5, 2003 | 9    12 |
| TITLE | | |
| | Inmate Classification | |

9.    An inmate is in pretrial or presentence status for a Capital Felony Murder charge.

All increases to Overall Risk Level 5/Administrative Segregation shall be made by the Director of Offender Classification and Population Management.

D.    **Security Risk Group Members**. Any inmate designated as a Security Risk Group Member shall not be classified lower than Overall Risk Level 3 and placed in a Close Monitoring unit in accordance with Administrative Directive 6.14, Security Risk Groups. An inmate released from the Department while designated as a Security Risk Group Member shall be readmitted on the same status. The Director of Central Intelligence shall review the designation in accordance with Administrative Directive 6.14, Security Risk Groups.

E.    **Security Risk Group Safety Threat Members**. Any inmate designated as a Security Risk Group Safety Threat Member shall be classified to Overall Risk Level 4 and placed in a Close Custody unit in accordance with Administrative Directive 6.14, Security Risk Groups. An inmate released from the Department while designated as a Security Risk Group Safety Threat Member shall be readmitted in on the same status. The Director of Central Intelligence shall review the designation in accordance with Administrative Directive 6.14, Security Risk Groups.

13.    **Risk Level Reclassification from Community Placement**. Risk Level increases from Overall Risk Level 1 for inmates remanded to custody and whose Community Release has been revoked, requires a risk reclassification hearing. Also, the Community Enforcement Supervisor shall provide the inmate with the following:

A.    Within 72 hours of the re-incarceration, a statement of reasons for the proposed increase from Risk Level 1 status except those that may cause a security problem or undue harm to the public;

B.    A copy of any documents pertaining to such statement of reasons unless the security of the facility and public warrants otherwise.

C.    A notification of the date, time, and location of a hearing on such proposed revocation. This notice shall state that the inmate may appear at such hearing with a correctional advocate as a representative and present documents at such hearing on the inmate's behalf.

Any inmate in community placement status and returned to a Level 2 or higher security facility shall have a classification hearing within 14 days of return to the facility. This time limit may be extended for cause. A disciplinary hearing shall not substitute for a classification hearing. A classification hearing shall not consider disciplinary matters unless the inmate has been found guilty of an offense under Administrative Directive 9.5, Code of Penal Discipline. A classification hearing may consider reclassification for a nonchargeable matter and return the inmate to a higher security facility prior to a disciplinary hearing on a chargeable offense. Classification shall not be used to avoid a disciplinary hearing for an inmate. Records of the disciplinary

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |  |
|---|---|---|---|
| 9.2 | March 5, 2003 | 11 | 12 |
| TITLE | Inmate Classification | | |

ratings assigned the inmate as well as any changes of these ratings shall be shared with the inmate in writing. A classification decision may be appealed to the Unit Administrator or designee within 15 days of the decision.

16.   **Level of Review Required for Classification Reviews**.  The Unit Administrator shall designate staff within the unit responsible for classification reviews and assignments.  With the exception of classification assignments made by the Director of Offender Classification and Population Management, classification decisions may be appealed to the Unit Administrator.  The Unit Administrator shall respond in writing within 15 business days of receipt of the appeal.

17.   **Inmate Supervision Requirements**.  Supervision requirements during transport shall be in accordance with Administrative Directive 6.4, Transportation and Community Supervision of Inmates.  All other inmate supervision outside the facility's perimeter with the exception of Administrative Directive 9.8, Furloughs, shall be governed by an inmate's Risk Level in accordance with the following:

A.    An inmate classified as Level 3, Level 4 or Level 5 shall be excluded from a job or program assignment that is outside the facility's security perimeter.

Any Security Classification Level 3, 4 or 5 inmate, who is to be moved beyond the facility's security perimeter, shall be managed in accordance with Administrative Directive 6.4, Transportation and Community Supervision of Inmates.

B.    Any Risk Level 2 or 1 inmate assigned to a facility, who is placed on an outside job or program assignment, shall have intermittent observation by staff or an agent of the Department at a minimum of once every two (2) hours or continuously if deemed to be appropriate by the Unit Administrator or designee.

18.   **Other Classification Actions**.

A.    **Outside Work Assignments**.  The Unit Administrator shall be the approving authority for any inmate placed on an outside job or program assignment.  An inmate shall be classified as an Overall Level 2 prior to review and meet the following additional criteria to be considered for outside job or program assignment:

1.    No sex offense or history;
2.    No high notoriety crime;
3.    No Class A felony unless voted to Parole;
4.    Not less than 30 days at the facility unless on outside clearance status at sending facility prior to transfer;
5.    No Class A disciplinary offense convictions or pending disciplinary charges within 120 days; and
6.    No Class B disciplinary convictions or pending disciplinary charges within 90 days.

Exhibit
E

**ATTACHMENT B**
**CONNECTICUT DEPARTMENT OF CORRECTION**

**INMATE REQUEST FORM**

Facility/Unit: _Corrigan, C.I. B-Pod #213_    Date: _June 24, 2001_

Inmate Name: _Reid, Robert_    Number: _262849_

Request: _Please be advise this is my second Request concerning your response to my June 3, 2001, which was answered by you on 6-4-01 stating my counselor + yourself would be conducting a Classification board review the week of June 3, 2001, this never happen Nor have I had the chance to submit my input in the Classification process sense being at Corrigan._

_Thanks Much,_
_Robert Reid_

**(continue on back if necessary)**

Previous Action Taken: _____

**(continue on back if necessary)**

Submitted to: _Ms. Borden CCS_    Date Received: _____

Acted on by: _____

Action Taken and/or Response: _It will be done this week — hopefully tomorrow morning_

_____

**(continue on back if necessary)**

Date of Response to Inmate: _6-25-01_

Signature of Staff Member: _Mrs Borden_

Exhibit

F

# N. H. STATE PRISON

## `LAW LIBRARY`



# NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS



RECEIVED

MAR 0 7 2000

BY:_____

# CLASSIFICATION HANDBOOK

## N. H. STATE PRISON

### Revised 1999

`LAW LIBRARY`

there is an obligation to notify a victim or agency. If there is, the Captain's Office will obtain the confidential victim file from Offender Records. They will then notify the Victim Services Coordinator and convey the pertinent information.

M.    Inmate Appeal Procedures

Upon receipt of the Classification Board results, it can be appealed to the Warden on an Inmate Request slip within fifteen days of receipt of notice. If the appeal is denied at this level and the inmate sees reason to further appeal the decision, it can be appealed to the Commissioner on an Inmate Request Slip within fifteen days of receipt of denial. The Commissioner's decision is final. The inmate shall not appeal to the Commissioner until receiving a response from the Warden.

III. INMATE RECLASSIFICATION

The reclassification process is an integral part of the overall classification process and is done to provide the inmate population at all New Hampshire Department of Corrections facilities with a fair and consistent method of progressing through the system's custody levels towards eventual release to society where applicable.

A.    Reclassification Hearings

1.    The schedule for Reclassification Hearings is set up to properly manage the inmate population while at the same time providing the inmate with a time frame to complete programs in accordance with his/her length of sentence and their Individual Pre-Release Plan. Inmates housed out of state or in other facilities will be subject to the reclassification procedures of that institution, subject to approval by the New Hampshire Department of Corrections. It is expected that most inmates residing in a Departmental facility will attend reclassification hearings. After notifications, if the inmate chooses not to participate, the inmate must notify the Unit Team in writing. It is mandatory, however, that each inmate participate in a Classification Board at least on an annual basis. A recommendation for an unscheduled Reclassification Hearing can be made for an individual inmate by the Unit Manager of the inmate

housing unit or by the Classification Officer in cases where new information is obtained (e.g. sentence reduction or additional pending charges/sentences) or in cases where the behavior of the inmate (positive/ negative) warrants earlier consideration.  If the Unit Team recommends reclassification via a Unit Team Classification Board to the Classification Officer and the Classification Officer agrees with the recommendation, the Classification Officer will recommend to the Warden the reclassification of the inmate.  It is the Unit Team's responsibility to demonstrate to the Classification Officer that all program/treatment needs required and recommended have been met.  If the Classification Officer does not agree with the recommendation of the Unit Classification Board, the Classification Officer will recommend to the Warden a more appropriate reclassification of the inmate with justification for his/her recommendation.  The schedule for standard reviews for reclassification are as follows; however, if inmates believe they have legitimate reason(s) for an earlier review they may request review consideration to the Unit Board via an Inmate Request Slip.

a.  C-5 inmates assigned to the Special Housing Unit will be reviewed every three (3) months by the Unit Team.

b.  The Unit Classification Board will review the C-4 inmates' progress every six (6) months, or earlier if considered appropriate by the Unit Team or the Classification Officer.

c.  The Unit Team will review the C-3 inmates' progress every six (6) months, or earlier if considered appropriate by the Unit Manager or the Classification Officer, for those inmates with less than 3 years to their Minimum Parole Date, except for those with a consecutive sentence to serve.

d.  The Unit Team will review the C-3 inmates' progress every year, or earlier if considered appropriate by the Unit Manager or the Classification Officer, for those inmates with more than 3 years to their Minimum Parole Date or who have a consecutive sentence to serve.

e.  Each inmate will be advised orally at the hearing or by the written notice, when, approximately, their next hearing will be.

2.  The inmate will automatically be scheduled by the

Risk Rating:

| P-Rating | I-Rating |
|----------|----------|
| P-5 to P-4 | 3 or lower |
| P-4 to P-3 | 3 or lower |
| P-3 to P-2 | 2 or lower |
| P-2 to P-1 | 2 or lower |

The greatest care and caution must be exercised in considering a reduction in a P-rating, particularly a high P-rating. this principle is particularly important when considering the reduction for inmates who are classified C-5 with a code PT before they have served 12 months.

b. The prior formula provides the eligibility criteria for P-Rating reductions. However, eligibility is only the first criterion that must be considered in reducing an inmate's public risk rating. Other criteria which might be considered, particularly for assignment to a setting outside of the prison, are suitability and acceptability.

Eligibility: Eligibility is defined, for purposes of classification, as the utilization of objective, measurable factors or criteria to determine the inmate program status transfer, security, program placement, etc.). An inmate must meet the eligibility criteria prior to assessing suitability. Examples of eligibility criteria for community corrections, for example, include: the inmate must be within nine (9) months of parole eligibility date, the inmate must be eligible for C-1 classification status.

The New Hampshire Department of Corrections does not believe that the use of eligibility criteria alone is sufficient to determine whether an offender should be placed in a certain status; e.g., reduced custody. Some offenders who have been determined to be eligible for a reduced custody level may not be, in fact, suitable for that status.

Suitability: Suitability is defined as the utilization of objective, measurable variables, usually employed in combination, to

55

immediate basis following a serious disciplinary violation.  Extremely serious violations may result in an immediate classification board held by the Classification Officer, SHU Unit Manager, and Security Lieutenant or Counselor/Case Manager. Additionally, in some instances, the Classification Board will recommend an I-rating increase based upon a number of minor violations obtained over six (6) months.  The following system will be employed for I-Rating changes involving institutional adjustment behavior between classification reviews:

| Behavior | I-Rating Change |
|---|---|
| Good behavior, few "B" and "C" rule violations and no "A" violations | I-rating decreased one (1) level |
| Satisfactory behavior, several "B" & "C" violations without pattern and that do not interrupt the orderly operation and safety of the institution, no "A" violations | No change in I rating |
| Unsatisfactory behavior, i.e., guilty findings for drug possession, usage, dirty urine(s), refusals to produce urine samples, several "B" and "C" pattern and/or interrupt the orderly operation and safety of the institution, "A" violation(s) | Possible I-rating increase of at least one (1) level |
| Poor behavior, serious "A" violation(s) | Possible I-rating increase of at least two (2) levels |

I-Rating changes must be recommended, on a case by case basis, by a Classification Board, conducted by the unit team and then reviewed and approved by the Warden.  Changes of two I-levels in one year are possible, but if such a change would affect the overall classification score of the inmate by two or more levels, the inmate will be moved accordingly.

location, and the Unit Manager within 24 hours.

4.  Inmates placed in RPS with prejudice shall not be assigned another job during the quarter unless institutional need dictates otherwise.  These assignments will be made by Classification only.

5.  Inmates placed in RPS without prejudice may appeal to the Administrator of that program area.

6.  Inmates placed in RPS without prejudice may be reassigned to another job assignment once a completed job change form has been approved by Classification for the specific facility.

7.  Inmates who are in RPS are to remain in their housing area during times when they are not required by a staff member to be elsewhere.

K.  Reduced Custody Programs

1.  Levels of Reduced Custody

    The reduced custody programs are established for inmates who do not require higher levels of custody and for those who require gradual reintegration back into society thereby providing the best possible method of both protecting society and providing a chance for rehabilitation through a supervised and meaningful process.

    a.  Victim Considerations/Requests

        Upon request, crime victims and survivors are informed of recommendations for reduced custody.  Respectful of the personal safety concerns of some victims, requests for restricting inmate location and travel are reasonably considered when plans for reduced custody are implemented.

    b.  Administrative Home Confinement

        Inmates in medium or reduced custody who meet statutory and regulatory requirements, may apply, through the Warden/Superintendent, to the Commissioner requesting that all or a specified portion of the last days before parole eligibility, be spent in Administrative Home Confinement (AHC) status with electronic monitoring.  Inmates will receive an

64

orientation on the AHC program at their
initial classification hearing and by Unit
Teams as inmates approach the window of
opportunity for application.  The program and
application process should be fully explained
to appropriate inmates at those times.

c.    Minimum Security Unit

The Minimum Security Unit and Lakes Region
Facilities house those approved eligible
inmates whose job, living and program
assignments are outside of the secure
perimeter of the Prison.  A C-2 minimum
security status is also available for those
approved eligible female inmates at the
appropriate housing unit.  The Northern N.H.
Correctional facility will also house C-2
inmates.

d.    Community Correction Centers (Concord/
Manchester)

The Community Correction Centers house
approved eligible inmates within three to nine
months of their minimum parole date and
suitable inmates returned on parole
violations.  Living assignments are in the
Community Correction Centers outside the main
Prison grounds and job assignments are based
on a Work Release Program in the community.
If an inmate has not yet reached his/her
minimum parole date, approval from the
sentencing judge must be obtained before
placement into the work release program.

Consideration of waiting lists, length of
Minimum Parole Date, past behavior, current
offense, etc. will help determine appropriate
review dates so as to provide this level of
programming to the largest number of inmates.
From time to time due to administrative needs
C-2 offenders may be placed at Community
Corrections Centers. Examples include trustee
cooks, central office workers and maintenance
workers. C-2 inmates will remain in the
centers except when accompanied by staff.

e.    Victim Notification

For inmates with victim/witness notification

65

G.    Use of Medium Custody Holding Cells (NHSP/M)

The holding cells in the medium custody units are
designed for the temporary detention of medium custody
inmates for a cooling off period when removal to Special
Housing Unit is not warranted or necessary.  The Platoon
Commander is the only one authorized to order such
detention.  This detention may not exceed two hours
without the approval of the Warden/Superintendent or
designee.  The maximum stay in a holding cell is four
hours per incident.

V. TRANSFER

For a variety of reasons it is sometimes necessary for inmates
sentenced to the New Hampshire State Prison to be housed
elsewhere.  In the event an inmate is transferred it is
important to remember that the inmate is required not only to
abide by the policies and procedures of the current housing
institution, but also the inmate is still under the authority
of the New Hampshire Department of Corrections.  All
programming/housing changes that would reduce the inmate's
custody level shall require the approval of the New Hampshire
State Prison Classification Board through the normal approval
process by the Warden/Superintendent and the Commissioner.
All requests for classification changes must come from from
the housing authorities where the inmate is currently being
housed.  This request must be accompanied by sufficient
paperwork explaining the appropriateness of the request and an
update of the inmate's adjustment at that facility.  This
request will be reviewed by the Classification Board using the
record only for review.  The Classification Officer will
notify the requesting authority of the board's decision via
the Interstate Compacts Administrator's Office.  The appeal
procedures are the same as the regular classification
hearings.

All transfers will be made with the approval of the Warden and
must be based on the acceptance of the authorities in the
receiving state.  In the event a transfer is granted, the
inmate will be provided with a copy of the New Hampshire
Department of Corrections Information and Data Sheet which
will explain the methods of contacting department personnel in
the event it is necessary.

A.    Locations of Transfers from the New Hampshire State
      Prison

      1.    Out of State:  New Hampshire inmates can be
            transferred to another state provided that the state
            is a member of the Interstate Corrections Compact.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Robert Reid, pro. se.
          Plaintiff

V.

John Armstrong, et al.,
          Defendants

Civil Action NO.
Docket No. 3:03 CV0208(JCH)

## AFFIDAVIT OF ROBERT REID

I, Robert Reid is the plaintiff in the above action, and hereby depose and say that:

1. I am over the age of eighteen and understand the obligations of an oath.

2. Prior to my parole board on August 8, 2002 I wrote Fred Levesque, director of Population Managment concerning my classification status, and my progression to a Level-3, and eventually a halfway house. A copy of this letter dated May 1, 2001 was also forewarded to Correctional Counselor Supervisor Joanne Borden.

3. I submitted an appeal to Warden Wezner dated July 9, 2001 which a copy was also forewarded to John Armstrong at the Commissioner's office concerning Correctional Counselor Supervisor conducting reclassification reviews contrary to the Interstate Corrections Compact and the Contract for the implementation of the Interstate Corrections Compact along with disregarding of said officials of New Hampshires Classification regulations.

4. Since I have been confined Confined at Corrigan. C. I. I have not been seen by Classification officials for regular objective Classification Reviews or Percent-of-time reviews or given at least 48 hours notification of any review prior to it being conducted. See May 6, 2001 Inmate Request to Wezner, and Borden (Attachment-1).

5. On or about June 26, 2001 a classification board review was conducted by Correctional Counselor Supervisor Borden without any notification 48 hours in advance nor was I present to provide input in the classification process. Nor was I aware of a July 2, 2001 Classification board, and the only time I became aware of any classification pro-

cess by notification was July 6, 2001 After any Classification board was conducted, which I refused to sign because I was not provided (48) hour notice nor was I able to be present at the Classification hearing.

6. I informed the Commissioner John Armstrong, Lead Warden George Wezner, Correctional Counselor Supervisor Joanne Borden, and Correctional Counselor Gary Credit. Also the Lynn Milling at the Interstate Corrections Compact office for the State of Connecticut, and Fred Levesque, Director of offender Classification + population Management about my delay and/or lack of the opportunity to progress through the Classification levels, when I was otherwise eligible in New Hampshire.

7. Because Affiant was still maximum custody (Level-4), and had not been able to progress down through the classification statues although eligible according to New Hampshire classification guidelines his opportunity for a favorable parole was denied on August 8, 2002 by New Hampshire Adult Parole Board.

8. The reason Connecticut officials maintain Affiant is not eligible for level reduction is because the length of remaining time on my sentence, and the fact I had not secured a vote to parole date for release, which New Hampshires Adult Parole Board would not provide unless I first complete a Anger Management program and secure a minimum custody halfway house status.

9. I thereafter had a tele-Conference in the New Hampshire Superior Court on this very same issue concerning the Classification procedures to be applied to me while in the State of Connecticut, in which the court ordered that I was to be afforded New Hampshires Classification procedures that same other New Hampshire inmates are afforded. This Court order was dated August 15, 2003 for the tele-Conference hearing held on July 11, 2003. see(Attachment-2).

10. Affiant informed Joanne Borden, and George Wezner of the New Hampshire Superior Courts order dated August 15, 2003, and in fact showed these staff members this order which was ignored, because After I brought this information I submitted Inmate Request form request that a early Classification be conduct According to New Hampshires Classification procedure, this request was dated on September 3, 2003. see Inmate Request to Borden (Attachment-3).

11. New Hampshire Prison officials After the 8-15-2003 order was issued, Corresponded with Connecticut Prison officials informing them instead of determining my progression on my maximum to use a date provide by the Administrator of New Hampshire Adult Parole Board, and requested that they "level the playing field," and asked them to contact New Hampshire official if the information provided in the letter was in anyway incorrectly state. letter referred is Dated September 5, 2003. See (Attachment-4)

12. Affiant wrote the Interstate Coordinator on September 22, 2003 inquiring whether there was any Communication with the State of New Hampshire concerning modification of Classification procedures to suit that of New Hampshire. this letter was never answered or returned. See (Attachment-5).

13. Affiant Also went as far as writing the New Commissioner who took John Armstrong position who name is Theresa Lantz on February 8, 2004 explain my situation while confined in Connecticut, this letter was forewarded to District Administrator Mark Strange who responded via letter dated March 2, 2004 informing Affiant that he basicly will continue to be Classified according to Connecticut's Classification manual. See (Attachment-5).

14. Thus, Affiant is being held against his will without being afford the process due to him to obtain parole in the state of Connecticut, which substantially delayed already his freedom

_Robert Reid_
Robert Reid - Affaint

Subscribed And Sworn to before me this 2⁹ day of March, 2004 under pains And penalty of perjury.

_Richard Perry_
Justice of the Peace/Notary Public

**MICHAEL LEWIS**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES APR. 30, 2008

MICHAEL L. LEWIS
NOTARY
PUBLIC
CONNECTICUT

Attachment
1

## ATTACHMENT B
## CONNECTICUT DEPARTMENT OF CORRECTION

## INMATE REQUEST FORM

Facility/Unit: _Corrigan, C. I._    Date: _May 6, 2002_

Inmate Name: _Reid, Robt_    108    Number: _262849_

Request: _I am writing this request concerning why I have not been receiving my periodic classification Unit boards nor have I received any advance notice of any that might have been conducted. I would like to know why I am unable to participate or make request to the decision maker as far as my status is concern._    Thanks Much,    Robert Reid

(continue on back if necessary)

Previous Action Taken: _____

_____

(continue on back if necessary)

Submitted to: _Ms. Borden-Correctional Counselor Sup._    Date Received: _____

Acted on by: _____

Action Taken and/or Response: _You are not due for a regular review until September. When do you meet N.H. Board of Parole?_

(continue on back if necessary)

Date of Response to Inmate: _5-8-02_

Signature of Staff Member: _Ms. Borden CCS_

Copy Retained

CN 9602
1/94

## ATTACHMENT B
## CONNECTICUT DEPARTMENT OF CORRECTION

### INMATE REQUEST FORM     B-108

Facility/Unit: _Corrigan, C.I._____     Date: ___MAY 6, 2002_____

Inmate Name: ___Reid, Robt_____     Number: _262849_____

Request: ___I'm writing this request concerning why I have Not been re-
ceiving my periodic classification Unit boards as A maximum Inmate Nor have I
received Any advance notice of Any that might have been conducted. I would like to
Know why I'm unable to participate or make request to the decision maker as for

**(continue on back if necessary)**     Thanks Much,     Robert Reid

As my status is concern.
Previous Action Taken: _____

_____

**(continue on back if necessary)**

Submitted to: _WARDEN - MR. Wezner_____     Date Received: _____

Acted on by: _____

Action Taken and/or Response: ___See Ms Borson's response____

_____

_____

_____

**(continue on back if necessary)**

Date of Response to Inmate: _____

Signature of Staff Member: _____

Copy Retained

Attachment 2

# THE STATE OF NEW HAMPSHIRE

MERRIMACK COUNTY                                    SUPERIOR COURT

ROBERT REID

v.

NEW HAMPSHIRE STATE PRISON, WARDEN

Docket No.: 03-E-180

## ORDER

A video hearing was held on the Petition for Writ of Habeas Corpus. The State was represented by Michael Brown with the defendant appearing by video conferencing from Connecticut.

Generally the issue presented by the defendant is that his parole eligibility in New Hampshire is being affected by the Connecticut classification system which is different than that in this state. He claims his classification in Connecticut is unwarranted and, as such, he has not been able to demonstrate his readiness for parole.

The State and the Department of Corrections acknowledged the different classification systems and have agreed to begin communications with the State of Connecticut to afford the defendant a similar classification as he would be eligible to receive in New Hampshire so that his parole opportunity would not be delayed. The State shall move expeditiously toward reaching an agreement with Connecticut.

So Ordered.

_____8-25-03_____
Date

_____
Peter H. Fauver
Presiding Justice

000006



**ATTACHMENT B**
**CONNECTICUT DEPARTMENT OF CORRECTION**

**INMATE REQUEST FORM**

Facility/Unit: _Corrigan, C.I. / F-Pod #119_ Date: _Sept 3, 2003_

Inmate Name: _Reid, Robert_ Number: _262849_

Request: _Please be Advised I would like for you to conduct A_
_early classification level reduction According ~~New to~~ to N.H._
_Classification ~~Reduct~~ Manual seeing that I'm eligible according_
_to there policy._

(continue on back if necessary) _Thanks Much_

Previous Action Taken: _____  _Robert Reid_

_____

(continue on back if necessary)

Submitted to: _C.C.S. Joane Borden_ Date Received: _____

Acted on by: _____

Action Taken and/or Response: _Please be advised that_
_you are managed under the_
_guidelines of Connecticut as you_
_have previously been informed._

_____

(continue on back if necessary)

Date of Response to Inmate: _9-4-03_

Signature of Staff Member: _Mrs. Borden_

_Copy Retained_



Attachment
4



## State of New Hampshire

### Department of Corrections

New Hampshire State Prison
P.O. BOX 14
CONCORD 03302-0014
(603) 271-1801

PHIL STANLEY
COMMISSIONER

JANE COPLAN
WARDEN

CRAIG BENSON
GOVERNOR

September 5, 2003

Major Lynn Milling
Connecticut Department of Corrections
Interstate Compact Office
1153 East Street South
Suffield, Ct. 06080

Dear Major Milling,

On July 11, 2003, Mr. Robert Reid had a video hearing where Judge Peter Fauvre presided. Mr. Reid expressed his concerns about his inability to progress through the Connecticut system due to his maximum release date of 8/24/2019. Because Mr. Reid is over his minimum of 2/16/02, the Connecticut Department of Corrections bases their classification decisions and movement through their system on his maximum release date. This prohibits his movement to a lesser classification status in their system until he is eighteen months from release. The court has asked that we address this issue and, as Judge Fauvre stated, "level the playing field for Mr. Reid" if possible.

It appears that Connecticut needs another date to base Mr. Reid's classification on other than 2019 to allow him to, if appropriate, progress through the classification system. What the Connecticut DOC seems to be looking for is a "firm vote to parole date." This would be a date somewhere in the future that needs to be established that would allow Mr. Reid to see the Parole Board again for possible parole consideration. Currently, Mr. Reid cannot meet the demands of the New Hampshire Parole Board because of the differences between New Hampshire's and Connecticut's classification systems. Accordingly, John Eckert, Administrator of the New Hampshire Parole Board, has established a new date which will be, on or about, September 1, 2004, where Mr. Reid will again go before the N.H. Parole Board for parole eligibility consideration. This date will only benefit Mr. Reid if he meets all the other requirements set by Connecticut for reduced custody such as being disciplinary free and no misconducts, working, and participating in programs or treatment as determined by the Connecticut Department of Corrections.

The intent of this letter is to allow Mr. Reid to work his way through the system, if appropriate. Please feel free to contact me if you have any questions or my understanding of Connecticut's classification system, as it relates to Mr. Reid, is incorrect.


Sincerely,

Kim Lacasse
Kim Lacasse
Administrator of Classifications
New Hampshire Department of Corrections


cc:    John Eckert, Executive Assistant, N.H. Parole Board
       Michael K. Brown, Senior Assistant Atty. General

Robert A. Reid, Ct#262849; NH#18258
Corrigan, C.I. /F-Pod #119
986 Norwich /New London turnpike
Uncasville, Ct. 06382

Sept 22, 2003

Attachment
5

Lynn Milling, Interstate Coordinator
Interstate Compact Department
1153 East Street South
Suffield, Ct. 06078


RE:  Communications with the State of New Hampshire concerning Modification of Class-
ification procedures to suit that of the sending state.


Dear Ms. Milling:

     I am writing you concerning to inquire whether or not NH Classification
Authorities have contacted you in anyway dealing with what procedures I would
be due to me while confined here in Connecticut, or is the classification pro-
cedures are gonna remain that of Connecticut as priorly stated by yourself?


                                                        Sincerely,

                                                        Robert A. Reid


PC: Retained

Robert A. Reid #91-ㅇ-247
Corrigan, C.I.
980 Norwich/New London Turnpike
Uncasville, Ct 06382

Dated: Feb 8, 2004



Theresa C. Lantz, Commissioner
Connecticut Dept. Of Corrections
24 Wolcott Hill Road
Wethersfield, Ct. 06109

RE:  TO MODIFY CLASSIFICATION PROCEDURES TO SUIT THAT OF NEW HAMPSHIRES FOR PAROLE PURPOSES

Dear Ms. Lantz:

Please be Advise that I am an inmate who has been transfered from the state of New Hamp on New Hampshire to Connecticut under The New England Interstate Corrections Compact. It should be noted that I am serving a 10 to 30 year sentence, and under N.H. guidelines one become eligible for parole on There minimum, and offer consideration for level reduction prior to one reaching There minimum parole eligibilite date being Disciplinary free for (60) days for class A offenses, and (30) for Class-B offenses, and being within in Three years of your minimum parole eligibility date to obtain a Level-3 Classification Status, and whatever program conditions that may be set by an individuals classification board. Ms. Lantz since being here in Connecticut D.O.C. The first few years I probably manage to receive a class A D.R., but under N.H. guidelines that D.R. would clear in (60) days and in all probability would have had level reduction between that D.R. And the next I received 3 years later. Although I was confined in N.C.I, and left on or About oct 5, 2000 to a Level-4 I still did not receive a D.R. for over 11 month from my release from N.C.I. Think it should be noted at this time that inmates in maximum security Institutions do not make parole from Level-4s in the state of N.H. Ms. Lantz I am being told I will not obtain a level regardless of what my parole eligibility date is, And in order for me to secure a level reduction I must first have an st affirmed vote to parole which is impossible because N.H Adult parole wont parole me until I received a minimum security placement. As you can see I'm in between a rock and a hard place, because of the differences between their classification procedures, and if I'm forced to be guided by Connecticut Classification procedures I will not be able to obtain a minimum security placement until I am within (18) months of my discharge date which would be approximate-

ly (113½) years from now. MS Lantz as it stands now I don't see any possibility of progression the Connecticut Department of Corrections prison system, thus making me un-exceptant of my confinement, which I believe somewhat effects my behavior towards dealing with and interacting with staff, but when I am unable to see a light at the end of the tunnel whats the use of walking, if you know what I mean. MS. Lantz I feel if my status was modified to suit that of inmates in N.H. as far as classification I would most likely be more exceptant in my confinement and working to meet those goals in seeking my parole and eventually my freedom, but because of the amount of time I've been lockdown I personally feel I need a slow integration back out into the real world, and feel the best way as did my last parole board panel feel that I should get to a halfway house and possibly secure work. Be advised I have written ms. milling several time without any resolution of this matter and the longer I remain in a Level-4 facility when I would other-wise be eligible under NH Classification guideline is in fact delaying a favorable parole con-sideration. MS Lantz I am requesting that N.H. Classification procedures be implemented in guiding my status or otherwise transfer me back to the sending state.

Sincerely Yours,

Robert Reid

P.S.   MS. Lantz I have never escaped or attempted to escaped but yet my escape Risk level is unjustly being maintain at a Level-4 contrary to the classifi-cations manual.

| DIRECTIVE NO. 9.2 | EFFECTIVE DATE March 5, 2003 | PAGE OF 12    12 |
|---|---|---|
| TITLE | Inmate Classification | |

Any inmate approved or being considered for outside clearance who has been denied parole, shall be evaluated by the Unit Administrator to assess the appropriateness of outside clearance.

B.    <u>Facility Based Work Release and Education Release Eligibility Criteria</u>. An inmate may be placed in a facility based work release and education release as appropriate when the following criteria are met:

    a.    classified Level 2;

    b.    remain discipline free of a Class A offense during the preceding 120 days;

    c.    remain discipline free of a Class B offense during the preceding 60 days;

    d.    no escape(s) or return from escape within one (1) year;

    e.    no community release program failures during the preceding six (6) months;

    f.    have no pending charges or detainers;

    g.    have no sex offender history except prostitution;

    h.    favorable recommendations for inmates with mental health need scores greater that three (3) shall be forwarded to the Director of Health, Mental Health and Addiction Services for approval to ensure continuity of care; and

    i.    must not be serving the mandatory portion of Driving While Intoxicated, 14-227(a) or a Driving Under Suspension offense that originally was related to a Driving While Intoxicated, 14-215(c) sentence.

C.    <u>Indeterminate Sentences</u>. The Commissioner may release any inmate sentenced to an indeterminate sentence pursuant to Connecticut General Statutes 21a-277(d) or 21a-279(e) at any point during that sentence. The Unit Administrator may recommend release at any time during the sentence. Only favorable recommendations shall be forwarded to the Commissioner's Office via the Director of Offender Classification and Population Management. The initial review shall be made after the completion of Initial Classification and a 30-day period of confinement. If denied, the Unit Administrator shall set another review date no more than six (6) months from the decision date. Each review and disposition shall be documented on the Inmate Classification History Form in Section 5 of the Master File.

19.    <u>Exceptions</u>. Any exception to the procedures in this Administrative Directive shall require prior written approval of the Commissioner.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.2 | March 5, 2003 | 10 | 12 |

| TITLE |
|---|
| Inmate Classification |

hearing, including information provided by the inmate, shall be forwarded to the counselor supervisor or higher authority as appropriate. If the inmate's assignment to Risk Level 1 is revoked, the counselor supervisor or higher authority shall state the reasons in writing and change the risk level. The risk score will be increased to Overall Risk Level 2, except in the case where new information would result in a level increase due to a change in one of the risk factors.

D.  Not withstanding the above provisions, this criterion shall not interfere with the use of discretion invoking incremental sanctions by a Community Enforcement Officer or higher authority for technical, non-criminal violations to include, but not be limited to intervention, increased programming, detoxification and electronic monitoring through the Community Release Intervention Program as enumerated below:

1.  inmates shall be temporarily remanded by the Community Enforcement Unit with CN 9202, Re-Admission Tracking Form, placed in the master file and so noted on the Classification History Log in the master file;

2.  no classification transaction shall be required, unless it has been determined that the inmate will not be placed back into the community;

3.  Records staff shall notify Addiction Services when an inmate is returned for a positive urinalysis so as to provide necessary intervention;

4.  the Community Enforcement Unit shall review and track each case and make necessary modifications to the inmate's Conditions of Release for reinstatement into the community; and

5.  if it is determined by the Unit Administrator, in consultation with the Director of Community Enforcement, that the inmate is not appropriate for re-release, the inmate shall then be scheduled for a reclassification hearing and reviewed for an overall level increase as appropriate and considered for a transfer to a sentenced facility if the inmate has greater than 15 days to discharge.

14.  **Risk Level Reclassification Resulting from New Information.** Whenever new information is received that is relevant to an inmate's risk or needs classification, a reclassification review shall occur.

15.  **Inmate Involvement.** An inmate should be involved in program decisions to the extent feasible. The inmate shall be seen by classification staff for every objective classification action except Percentage-of-Time Reviews unless the inmate is denied. The inmate may appear before the classification staff as required by this Directive, as long as the appearance does not jeopardize the safety and security of the facility, its staff, or other inmates. If an appearance of the inmate is required, the inmate shall receive notice 48 hours prior to classification review. An inmate may waive, in writing, the notice requirement or any appearance. Within five (5) days of a classification decision, the decision, including the overall risk score and need



# STATE OF CONNECTICUT
## DEPARTMENT OF CORRECTION
### South District Office
### 944 Highland Ave
### CHESHIRE, CONNECTICUT 06410

Mark W. Strange
District Administrator

March 2, 2004

Mr. Robert Reid #262849
Corrigan-Radgowski Correctional Institution
982 Norwich-New London Tpke.
Uncasville, CT. 06382

Dear Mr. Reid:

This letter acknowledges receipt of your correspondence to Commissioner Lantz, dated February 8, 2004 and forwarded to this office for response concerning Interstate Compact issues.

Pursuant to Connecticut's Classification Manual, level reductions due to percentage of time served, are made at the discretion of the facility Warden. Given that you have participated in necessary programming and remained disciplinary free, you may pursue review consideration by contacting your Unit Counselor. Favorable recommendations for level reduction will be forwarded to the Interstate Compact office to the authorities in New Hampshire for final approval.

Regarding parole consideration, on August 8, 2002, the New Hampshire Adult Parole Board denied your parole, with consideration following your placement in a halfway house. Under Connecticut supervision, you will remain ineligible for halfway house placement until you are an overall level 2 and within eighteen months of your release date.

I will forward a copy of this correspondence to Warden John Tarascio for his information. Any further questions regarding these issues should be addressed to your Unit Counselor.

Sincerely,

Mark W. Strange
District Administrator

MWS/mmm

Cc:    Brian K. Murphy, Deputy Commissioner
       John Tarascio, Warden
       File

*An Equal Opportunity Employer*