UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT REID | : | CIVIL ACTION NO. 3:03CV208 (JCH) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN ARMSTRONG, ET AL., | : | |
| *Defendant* | : | June 18, 2004 |

**DEFENDANTS' 9(c)1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

The defendants hereby file their statement of undisputed material facts in support of their Motion For Summary Judgment.

1. The plaintiff, Robert Reid, is a sentenced inmate from New Hampshire serving time in a Connecticut correctional institution. Currently, Mr. Reid is serving an indeterminate sentence of ten to thirty year sentence imposed by a New Hampshire court for Second Degree Assault, and pursuant to an agreement between the States of Connecticut and New Hampshire, the plaintiff is serving his sentence in Connecticut. See New Hampshire Mittimus, Ex. 1; Affidavit of Major Lynn Milling, Ex. 2 at ¶¶ 2, 3, 5.

2. The defendants, all employees of the Connecticut Department of Correction (hereinafter "DOC") are: John Armstrong, the former DOC Commissioner; George Wezner, a former DOC Warden, and Joanne Borden and Gary Credit, both of whom are correctional counselors employed by DOC. See Complaint at paras. 2-5.

3. The plaintiff has an exceptionally violent history of behavior, both as a criminal while free in New Hampshire and while incarcerated there and in Connecticut. His current ten to thirty year sentence is his punishment for assaulting a New Hampshire State Police Trooper, who had stopped a vehicle in which the plaintiff was only a passenger. During the course of the stop and

an attempt to administer a field sobriety test to the driver of the vehicle, the plaintiff attacked and repeatedly assaulted the officer, wrestling with him in the travel portion of a highway, repeatedly punching the trooper in the head and biting his thumb. His sentence was enhanced pursuant to New Hampshire state law given his history of felony convictions, including a sexual assault conviction. See *State v. Reid*, 134 N.H. 418, 419-21, 594 A.2d 160 (N.H. 1991); Affidavit of Lynn Milling, Ex. 2 at ¶ 13.

  4. The plaintiff continued his assaultive behavior while incarcerated in New Hampshire, having amassed a significant disciplinary history in his home state. For nearly three years prior to coming to Connecticut, the plaintiff was classified as a C-5 (maximum) inmate, the highest security classification in New Hampshire, and was assigned to a "special housing unit" as that term was used by New Hampshire correctional officials, resulting from the plaintiff's assault on a correctional officer where he stabbed the officer near the eye with a fork. See Disciplinary Records appended hereto as Ex. 3.

  5. After his placement in the special housing unit in New Hampshire, the plaintiff again received discipline after he grabbed a correctional officer's keys and used the keys to unlock his handcuffs. On another occasion, the plaintiff assaulted several correctional officers as they attempted to remove his handcuffs, kicking and attempting to bite the officers. In addition, the plaintiff's New Hampshire disciplinary history includes punishment for: threatening persons with bodily harm; having drugs in his urine; possession of escape implements; possession of a weapon; disruptive conduct; fighting; and causing bodily injury. See Disciplinary Records appended hereto as Ex. 3.

  6. On or about December 18, 1997, a representative of the New Hampshire interstate compact office wrote to Lynn Milling, a DOC Major who supervises Connecticut's interstate

compact agreements, requesting that Connecticut accept the plaintiff as a transferee under the Compact. A Corrections Compact Referral Summary prepared as part of the transfer request indicates that plaintiff "needs a fresh start" and is having "difficulty adjusting to current incarceration." See New Hampshire Referral Summary, Ex. 4.

7. Upon his arrival in Connecticut on February 23, 1998, the plaintiff was assigned to the Walker Reception and Special Management Unit for intake purposes, and three days later, sent to Northern CI, placed on administrative detention status pending an administrative segregation hearing. See DOC RT60 Record of Inmate Movements, Ex. 5.

8. Connecticut DOC maintains several different restrictive housing alternatives for its inmate population. The most restrictive, administrative segregation, is designed to safely manage inmates who are classified as threats to staff, other inmates or facility security. In order for an inmate to be placed in administrative segregation, a hearing must be held to give the inmate an opportunity to rebut the reasons for his placement, and approval for placement on this status must come from the Director of Offender Classification and Population Management, or a higher authority within DOC. Inmates assigned to administrative segregation can remain on that status indefinitely until their behavior changes to a degree that placement in a general inmate population becomes appropriate. Inmates on administrative segregation are reviewed for reclassification every seven days for the first two months and every thirty days thereafter, and may be released from this status only by approval of the Commissioner of the DOC or his designee. The plaintiff remained on administrative segregation during much of the time he spent at Northern. See DOC Restrictive Housing Status Chart, Ex. 6.

9. Over time, the plaintiff progressed through the various phases of the administrative segregation program, and was transferred from administrative segregation to the general

population at MacDougall Correctional Institution on October 5, 2000. From March 23, 2001 until the present, except for periods when he returned to New Hampshire to attend to legal matters in his home state, Mr. Reid has been housed at several Level 4, maximum security facilities in Connecticut. See RT60, Ex. 5. The inmate housing records for Mr. Reid show frequent returns to his home state to attend to legal matters. See RT60 Record of Inmate Movements, Id.

10. Although he has progressed out of the administrative segregation program, Mr. Reid has continued to engage in violent, disruptive behaviors. On February 14, 2000, Mr. Reid assaulted his cellmate at Northern, resulting in administrative sanctions. See Incident Report and Disciplinary Report, Ex. 7. His most recent assault occurred just this month, when he repeatedly assaulted a fellow inmate, punching the inmate with closed fists in the head and face. See RT 67 Inmate Disciplinary Report, Ex. 8; Incident Report and Disciplinary Report, Ex. 9.

11. In addition to the challenges posed to correctional officials by his violently assaultive history, Mr. Reid has a history of a sexual offense. Mr. Reid is classified as having a sexual risk score of 3, which means that he may only be placed in a halfway house with the consent of the DOC Commissioner. Currently, it is the practice of the DOC not to allow individuals with a sexual risk score of 3 or above to be placed in the community. See affidavit of Lynn Milling, Ex. 2 at ¶ 13.

12. With a current maximum release date in 2019, no firm parole date from the New Hampshire Board of Parole and a significant history of assaultive behavior, Mr. Reid is considered by Connecticut DOC officials to be a maximum security inmate, and therefore is held in maximum security facilities. Milling Affidavit, ¶ 10.

13. Although the plaintiff is a sentenced inmate from the State of New Hampshire, the plaintiff is subject to the inmate classification, discipline and general custody rules of the Connecticut Department of Correction. The Contract for the Implementation of The Interstate Corrections Compact between the states of Connecticut and New Hampshire expressly provides that

> It shall be the responsibility of the administration of the institution in the receiving state to confine inmates from a sending state; to give them care and treatment, including the furnishing of subsistence and all necessary medical and hospital supplies; to provide for their physical needs; to make available to them programs of training and treatment which are consistent with their individual needs; to retain them in safe custody; to supervise them; to maintain proper discipline and control; to make certain that they receive no special privileges and that the sentences and orders of the committing court in the sending state are faithfully executed. But nothing herein shall be construed to require the receiving state or any of its institutions to provide treatment, facilities or programs for any inmate confined pursuant to the Interstate Corrections compact which it does not provide for similar inmates not confined pursuant to said Compact.

The Contract further provides that all inmates "while in the custody of the receiving state shall be subject to all the provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed." Interstate Compact—Implementation Contract, Ex. 10 at pp. 2, 4.

14. The Connecticut DOC inmate classification guidelines prohibit incarceration of individuals with the plaintiff's history and present duration of sentence in a less secure environment. See Affidavit of Major Lynn Milling, Ex. 2 at ¶ 12, 13. With respect to inmates transferred from New Hampshire to other jurisdictions, the New Hampshire DOC's inmate classification procedures defer authority to make such classifications to the receiving state. See Relevant Portions of New Hampshire Classification Manual, Ex. 11 at p. 2.

15. The plaintiff has been denied parole on one occasion, and that he has been informed by the New Hampshire Adult Parole Board that he will not be considered for parole until he

obtains a halfway house placement and completes anger management classes.  See Parole Board Decision, Ex. 12.

16.  Mr. Reid also has been advised that a reduced custody level is viewed by New Hampshire authorities as a "privilege."  See 3/6/03 Letter From Denise Heath to Plaintiff, Ex. 13.

17.  The plaintiff is not entitled to parole in New Hampshire.  See Affidavit of John F. Eckert, Ex. 14 at ¶ 4.  The decision to release any convict on parole is a purely discretionary matter, with that discretion resting solely with the New Hampshire Adult Parole Board.  See Id. at ¶¶2, 3; New Hampshire Code of Administrative Rules for Adult Parole Board, Part 301, appended hereto as Ex. 15.

          RICHARD BLUMENTHAL
          ATTORNEY GENERAL

BY:    /s/
       Terrence M. O'Neill
       Assistant Attorney General
       Federal Bar No. 10835
       110 Sherman Street
       Hartford, CT  06105
       Tel: (860) 808-5450
       Fax: (860) 808-5591
       Email:terrence.oneill@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 18th day of June, 2004, first class postage prepaid to:

**Robert Reid, No.. 262849
Garner CI
P.O. Box 5500
Newtown, CT 06470**

_____/s/_____
Terrence M. O'Neill
Assistant Attorney General