UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT REID | : |
| | : PRISONER CASE NO. |
| v. | : 3:03-cv-208(JCH)(HBF) |
| | : |
| JOHN ARMSTRONG, et al.[1] | : MARCH 29, 2005 |

**RULING RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT [DKT. NOS. 16, 24 & 27]**

Plaintiff, Robert Reid, currently confined at the Garner Correctional Institution in Newtown, Connecticut, commenced this civil rights action pursuant to 28 U.S.C. § 1915. He alleges that the defendants failed to decrease his classification level to enable him to qualify for parole eligibility in connection with a conviction and sentence imposed on him in New Hampshire Superior Court. Pending before the court are cross-motions for summary judgment and plaintiff's motion to strike defendants' motion for summary judgment. For the reasons set forth below, the defendants' motion is granted and the plaintiff's motions are denied.

The plaintiff seeks to strike the defendants' motion for summary judgment because it was filed several days late. "A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion." Newport Elec., Inc. v. Newport Corp., 157 F.Supp.2d 202, 208 (D.Conn. 2001). The moving party must be specific in regards to what it is seeking to have stricken and must set forth reasons for why the materials should not be considered by the court. See, e.g., FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986). Untimeliness is not fatal to a

---

[1] The defendants named in the complaint are Commissioner John Armstrong, Warden George Wezner, Counselor Joanne Borden and Counselor Gary Credit. The plaintiff mistakenly identified Joanne Borden and Joane Borden in the complaint.

Motion for Summary Judgment. The plaintiff has not demonstrated that he was prejudiced by such untimely filing of the motion. Therefore, the plaintiff's motion to strike is denied.

**I.      Standard of Review**

"[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Not all factual disputes are material. The court considers the substantive law governing the case to identify those facts which are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.1997) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).

Even though the burden is on the moving party to demonstrate the absence of any genuine factual dispute, the party opposing summary judgment "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful."  Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted).  It "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation."  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  Instead, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita Elec. Indus. Co., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)).  "The 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment."  Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252).

In reviewing a motion for summary judgment, the court resolves all ambiguities and draws all inferences in favor of the nonmoving party.  See Niagara Mohawk, 315 F.3d at 175.  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991). A motion for summary judgment cannot be defeated "merely . . . on the basis of conjecture or surmise." <u>Trans Sport, Inc. v. Starter Sportswear, Inc.</u>, 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotation marks omitted).

When cross-motions for summary judgment are presented to the court, summary judgment should not be granted "unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." <u>Heyman v. Commerce & Indus. Ins. Co.</u>, 524 F.2d 1317, 1320 (2d Cir. 1975) (quoting 6 Moore's Federal Practice § 56.13 at 2247).

## II.    **Facts**[2]

In June 1990, the New Hampshire Superior Court sentenced the plaintiff to ten to thirty years of imprisonment in the New Hampshire Department of Corrections. Due to the plaintiff's violent behavior, prison officials in New Hampshire subsequently classified the plaintiff as a C-5 inmate and assigned him to a special housing unit.

In December 1997, a representative of the New Hampshire compact office wrote to Lynn Milling, Supervisor of the Interstate Compact Office of the State of Connecticut Department of Correction, and requested that Connecticut accept the plaintiff as a transferee under the Compact. Connecticut's Interstate Compact Office agreed to accept the plaintiff. In February 1998, prison officials in New Hampshire transferred the

---

[2] Any disputed facts, supported by evidence, are taken in the light most favorable to the non-moving party with respect to that motion.

plaintiff to the Connecticut Department of Correction.  The plaintiff was a C-5 maximum security inmate on the date of his transfer to Connecticut.

Based on the plaintiff's extensive disciplinary history in New Hampshire, Lynn Milling recommended that the plaintiff remain a level five inmate and that he be placed in administrative segregation at Northern Correctional Institution.  After a hearing, the final decision to place the plaintiff in administrative segregation was made by the Director of Offender Classification and Population Management, Fred Levesque.  The plaintiff eventually progressed out of the administrative segregation program.

Since March 23, 2001, the plaintiff has been classified as a level four inmate and housed at various level four facilities in Connecticut.  On July 6, 2001, a counselor at Corrigan Correctional Institution in Uncasville, Connecticut, requested that the plaintiff come to his office to sign a notice of a reclassification hearing to determine whether the plaintiff's classification level could be lowered to level three.  The hearing was to be held the same day.  The plaintiff read the notice but refused to sign it because he had not received the notice forty-eight hours in advance of the hearing.  The Department of Correction denied the plaintiff's request for a level reduction because the plaintiff still had a significant portion of his sentence to serve and he had no firm vote to parole date.

On July 9, 2001, the plaintiff appealed the denial of the level reduction to Warden Wezner.  On July 19, 2001, Warden Wezner responded to the plaintiff's appeal.  He agreed with the decision to deny the plaintiff a reduction in his classification level and informed the plaintiff that all classification decisions were governed by Connecticut Department of Correction rules and regulations.  He also noted that the

plaintiff's request for a level reduction would be reconsidered by the Department when he had received a firm vote to parole date from the New Hampshire Adult Parole Board.

In May 2002, defendant Borden informed the plaintiff that he was scheduled for a re-classification hearing in September 2002. On August 8, 2002, the New Hampshire Adult Parole Board denied the plaintiff's request for parole because the plaintiff was classified as a C-5 level inmate.  The Board indicated that it would re-hear the plaintiff's request for parole after the plaintiff was in a halfway house and was participating in an anger management class.

In November 2002, the plaintiff inquired as to how he could get into a halfway house.  Defendant Borden responded that the plaintiff must be classified as a level 2 inmate and be within eighteen months of the date of his discharge.  Major Milling also informed the plaintiff that to be eligible for community release, he must be classified as a level 2 inmate and be within eighteen months of his maximum release date.

In December 2002, defendant Credit informed the plaintiff that, pursuant to Connecticut Department of Correction regulations, he would not be considered eligible for a reduction to level 3 until he received a firm vote to parole date.  Defendant Credit also informed the plaintiff that he would not be eligible for a reduction to level 2 due to his sex offender status.  The plaintiff's status was based on his prior conviction for sexual assault.

Pursuant to Connecticut's Interstate Corrections Compact with the State of New Hampshire, the plaintiff is subject to the State of Connecticut's rules and regulations pertaining to classification issues.  The New Hampshire Department of Corrections Classification Handbook provides that classification decisions concerning any New

Hampshire inmate who is transferred to a prison facility outside of New Hampshire are made by prison officials at the facility where the inmate is confined.  Once a change in classification is recommended by the facility where the inmate is housed, the New Hampshire Department of Correction Classification Board must then review the recommendation and approve or deny it.

The plaintiff signed his complaint on January 2, 2003, and the complaint was with the court on January 28, 2003.  The plaintiff seeks injunctive relief and monetary damages.

### III.   Discussion

The plaintiff has moved for summary judgment arguing that there are no issues of material fact in dispute and he is entitled to judgment as a matter of law.  The defendants move for summary judgment on the same grounds.  The court first considers the arguments raised in the defendants' motion

The defendants argue that:  (1) the plaintiff has no right to a particular classification level; (2) the plaintiff fails to allege that a liberty interest was adversely affected by the defendants' actions; and (3) the plaintiff fails to allege the personal involvement of the defendants in his initial placement in administrative segregation in 1998.

####   A.   Classification Level

The plaintiff claims that the defendants did not notify him in a timely manner concerning the reclassification hearing held in July 2001, and that he was unable to present evidence to support his request for a level reduction.  Thus, he contends that the defendants improperly denied his request to be reduced to a level 3 classification

inmate. The defendants argue that plaintiff's claim that they denied him a particular classification level fails to state a claim upon which relief may be granted because the plaintiff has no protected liberty interest in his classification under either federal or state law.

It is well-settled that, a lawfully convicted and incarcerated prisoner has a restricted range of protected liberty interests. See Bell v. Wolfish, 441 U.S. 520, 546-47 (1979) (constitutional rights of inmates are subject to reasonable limitation or restriction in light of legitimate concerns regarding the safety or security of the correctional institution); Meachum v. Fano, 427 U.S. 215, 224 (1976) (every change in a condition of confinement that has a substantial adverse impact on a prisoner is not entitled to protection under the Due Process Clause). The plaintiff bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). If the plaintiff is unable to show the existence of a protected interest, the claim must be dismissed regardless of whether the defendants acted in accordance with the requisite procedures. See id. at 317-18.

The Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal prison officials full discretion to determine prisoner classifications. Moody v. Daggett, 429 U.S. 78, 99 n.9 (1976). Similarly, where state prison officials are given full discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected right to a particular classification. See Madewell v. Roberts, 909 F.2d 1203, 1207 (8th Cir. 1990) (no due process issue in class status of

prisoner where prisoner failed to point out any state statute, regulation or policy statement that limited prison officials' discretion in classifying prisoner). In Connecticut, the Commissioner of Correction is "responsible for establishing disciplinary, diagnostic, classification, treatment, vocational . . . services and programs throughout the [D]epartment [of Correction]." Conn. Gen. Stat. § 18-81. Thus, under state law, the State of Connecticut Department of Correction has full discretion to make inmate classification decisions.

This district has previously held that the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action because there is no liberty interest in a particular prison classification. See Green v. Armstrong, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D. Conn. Feb. 25, 1998), aff'd, No. 98-3707 (Aug. 20, 1999) (summary order). In Green, the district court noted that the state courts have found no state-created liberty interest in proper classification. Id. at 10 (citing Santiago v. Commissioner of Correction, 39 Conn. App. 674, 680, 667 A.2d 304, 307 (1995), for the proposition that improper classification does not deprive inmates of any legally recognized liberty interest); see also Wheway v. Warden, 215 Conn. 418, 430-32 (1990) (holding that Commissioner of Correction retains discretion to classify prisoners to any security level and prison classification programs do not create any liberty interest or any constitutional entitlement to due process); Miller v. Warden, No. CV 000598372, 2000 WL 1258429, at *1 (Conn. Super. Ct. July 21, 2000) ("The Connecticut case of Wheway v. Warden, 215 Conn. 418, 430-31 (1990), established in Connecticut that an inmate has no liberty interest in a particular security classification.").

Thus, inmates in Connecticut do not have any constitutionally protected interest, federally created right or state created liberty interest in their classifications. See See Allen v. Armstrong, No. 3:98cv668(PCD), slip. op. at 2 (D. Conn. Sept. 15, 2000) (holding that the Due Process Clause affords prisoners no protection from erroneous classifications); Nieves v. Coggeshall, No. 3:96cv1799 DJS, 2000 WL 340749, at *5 (D. Conn. Jan. 31, 2000) (holding that inmate has no protected liberty interest in his classification); see also Pugliese v. Nelson, 617 F.2d 916, 923-24 & nn. 5, 6 (2d Cir. 1980) (federal prisoner had no due process liberty interest in avoiding classification that may have delayed or precluded participation in institutional programs including, among other things, furlough and work release).

In July 2001, prison officials had classified the plaintiff as a level four inmate. On July 6, 2001, a re-classification hearing was held by prison officials at Corrigan Correctional Institution. The officials denied plaintiff's request for a level reduction because of the length of time remaining on his sentence and because he had not received a firm vote to parole date from the New Hampshire Adult Probation Board. The plaintiff claims that defendants Borden and Credit were responsible for denying his request and that he was unable to present evidence to support his request because he did not get notice of the hearing until the day of the hearing. The plaintiff appealed the decision to Warden Wezner, who affirmed the decision later in July 2001.

Under Connecticut's contract with the New Hampshire Department of Corrections pursuant to the Interstate Corrections Compact, classification decisions concerning an inmate transferred from the New Hampshire Department of Corrections to the Connecticut Department of Correction are governed by the laws and regulations

of the State of Connecticut.  See Defs.' Mem. Law Support Mot. Summ. J., Ex. 10, ¶¶ 13, 17.  In addition, the New Hampshire Department of Corrections Classification Handbook provides that classification decisions concerning any New Hampshire inmate who is transferred to a prison facility outside of New Hampshire are made by prison officials at the facility where the inmate is confined.  See Defs.' Mem. Law Support Mot. Summ. J., Ex. 11, § 5.  Because inmates confined in Connecticut do not have a protected liberty interest in a particular classification, the court concludes that the plaintiff was not deprived of a protected liberty interest when the defendants denied his request for a classification level reduction in July 2001.  Because the plaintiff has not identified a protected liberty interest in the denial of his request for re-classification to a lower level, his Fourteenth Amendment Due Process claim fails.  See Frazier, 81 F.3d at 317 (to prevail on a Fourteenth Amendment due process claim of a deprivation of a liberty interest based on state law, an inmate must demonstrate both that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from confinement or restraint" and that the "confinement or restraint creates an 'atypical and significant hardship'" as defined by the Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995)).  The defendants' motion for summary judgment is granted on this ground.[3]

### B.    Right to Parole

The plaintiff claims that the defendants' failure to reduce his classification level

---

[3] Because the court has determined that the defendants' motion for summary judgment should be granted as to all of plaintiff's claims, it need not address the remaining argument raised by the defendants.

made it impossible for him to qualify for community release placement and to be considered eligible for parole by the New Hampshire Adult Parole Board. The defendants argue that the plaintiff has no enforceable expectancy in release on parole from his New Hampshire sentence.

Absent some state law or regulation to the contrary, a prisoner has no constitutional or inherent right to be conditionally released before the expiration of his sentence. Board of Paroles v. Allen, 482 U.S. 369, 373 (1987); Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Smith v. U.S. Parole Comm'n, 814 F. Supp. 246, 248 (D. Conn. 1993) (prisoner has no constitutional right to be released prior to expiration of valid sentence). Thus, prisoners have no general federal constitutional right to parole or a parole hearing. See Allen, 482 U.S. at 373.

A lawfully imprisoned inmate does not have a protected liberty interest in being released on parole prior to the expiration of the term of his sentence unless that right is created under state law. See Pugliese, 617 F.2d at 923. In Connecticut, the state statute governing parole does not include mandatory language and, therefore, does not create a protected liberty interest in parole. Conn. Gen. Stat. §54-125. "Any person confined for an indeterminate sentence . . . may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which the person is confined . . . ." Id. (emphasis added); see also Vincenzo v. Warden, 26 Conn. App. 132, 141 (1991).

In New Hampshire, the decision to parole an inmate is discretionary. (See Eckert Aff. at ¶ 2.) The New Hampshire statute governing parole does not include

mandatory language. N.H. Rev. Stat. § 651-A:6; see also N.H. Code Admin. R. Par. 301.01-.02. The New Hampshire Supreme Court has held that under New Hampshire state law, parole is not a matter of right. See Baker v. Cunningham, 128 N.H. 374, 380, (1986) (holding that in New Hampshire, "the decision to deny [parole] is discretionary"). Thus, the plaintiff has no constitutionally or federally protected right to parole. The defendants' motion for summary judgment is granted as to claims that the defendants denied him a right to be considered for parole by the New Hampshire Parole Board.[4]

## IV.    CONCLUSION

The defendants' Motion for Summary Judgment [**Dkt. No. 24**] is **GRANTED**. The plaintiff's Motion for Summary Judgment and Motion to Strike Defendants' Motion for Summary Judgment [**Dkt. Nos. 16, 27**] are **DENIED**. The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

Dated this 29th day of March, 2005, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[4] Because the court has concluded that the defendants' motion for summary judgment should be granted as to all claims in the complaint, the plaintiff's motion for summary judgment is denied.