UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT A. REID | : | CIVIL NO. 3:03CV208 (JCH) |
| v. | : | |
| JOHN ARMSTRONG, ET AL. | : | DECEMBER 12, 2006 |

### DEFENDANTS' TRIAL MEMORANUDM

**I.     TRIAL COUNSEL**

    **Plaintiff:**

        **Robert Reid, Pro Se**

    **Defendants:**

        Terrence M. O'Neill
        Assistant Attorney General
        110 Sherman Street
        Hartford, CT  06105
        Tel.:  (860) 808-5450
        E-Mail:  terrence.oneill@po.state.ct.us

**II.    JURISDICTION**

The plaintiff alleges deprivations of rights secured by the United States Constitution, and invokes the court's jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

**III.   JURY/NON-JURY CASE**

The plaintiff has demanded a jury trial.

IV.   **NATURE OF THE CASE**

The plaintiff, a New Hampshire sentenced inmate who, for a time, was housed in certain correctional facilities in Connecticut. Because of the plaintiff's misconduct in New Hampshire, including an assault on a New Hampshire correctional officer, the Connecticut Department of Correction placed the plaintiff at its maximum security facility, the Northern Correctional Institution. After completing the program for administrative segregation offenders at Northern CI, the plaintiff was transferred to Corrigan Correctional Institution. It is his claim that, while at Corrigan, correctional officials failed to reduce his security risk level from 4 to 3, and that this failure constitutes a violation of the plaintiff's Fourteenth Amendment right to equal protection. The defendants have filed an answer and affirmative defenses denying the plaintiff's legal claim.

V.   **STIPULATIONS OF FACT AND LAW**

The defendants will agree to stipulations of fact B, C, D, E, F, G, H, I, J, K and S as set forth in the plaintiff's undated trial memorandum. In addition, the defendants offer to stipulate to the following:

1. The plaintiff, Robert Reid, is a sentenced inmate from New Hampshire serving time in a Connecticut correctional institution. Currently, Mr. Reid is serving an indeterminate sentence of ten to thirty year sentence imposed by a New Hampshire court for Second Degree Assault.

2. The defendants, all employees of the Connecticut Department of Correction (hereafter "DOC") are: John Armstrong, the former DOC Commissioner; George Wezner, a

former DOC Warden, and Joanne Borden and Gary Credit, both of whom are correctional counselors employed by DOC.

3.  The plaintiff has an exceptionally violent history of behavior, both as a criminal while free in New Hampshire and while incarcerated there and in Connecticut. His current ten to thirty year sentence is his punishment for assaulting a New Hampshire State Police Trooper, who had stopped a vehicle in which the plaintiff was only a passenger. During the course of the stop and an attempt to administer a field sobriety test to the driver of the vehicle, the plaintiff attacked and repeated assaulted the officer, wrestling with him in the travel portion of a highway, repeatedly punching the trooper in the head and biting his thumb. His sentence was enhanced pursuant to New Hampshire state law given his history of felony convictions, including a sexual assault conviction.

4.  The plaintiff continued his assaultive behavior while incarcerated in New Hampshire, having amassed a significant disciplinary history in his home state. For nearly three years prior to coming to Connecticut, the plaintiff was classified as a C-5 (maximum) inmate, the highest security classification in New Hampshire, and was assigned to a "special housing unit" as that term was used by New Hampshire correctional officials, resulting from the plaintiff's assault on a correctional officer where he stabbed the officer near the eye with a fork.

5.  After his placement in the special housing unit in New Hampshire, the plaintiff again received discipline after he grabbed a correctional officer's keys and used the keys to unlock his handcuffs. On another occasion, the plaintiff assaulted several correctional officers as they attempted to remove his handcuffs, kicking and attempting to bite the officers. In addition, the plaintiff's New Hampshire disciplinary history includes punishment for: threatening persons

3

with bodily harm; having drugs in his urine; possession of escape implements; possession of a weapon; disruptive conduct; fighting; and causing bodily injury.

6. On or about December 18, 1997, a representative of the New Hampshire interstate compact office wrote to Lynn Milling, a DOC Major who supervises Connecticut' interstate compact agreements, requesting that Connecticut accept the plaintiff as a transferee under the Compact. A Corrections Compact Referral Summary prepared as part of the transfer request indicates that plaintiff "needs a fresh start" and is having "difficulty adjusting to current incarceration."

7. Upon his arrival in Connecticut on February 23, 1998, the plaintiff was assigned to the Walker Reception and Special Management Unit for intake purposes, and three days later, sent to Northern CI, placed on administrative detention status pending an administrative segregation hearing.

8. Connecticut DOC maintains several different restrictive housing alternatives for its inmate population. The most restrictive, administrative segregation, is designed to safely manage inmates who are classified as threats to staff, other inmates or facility security. In order for an inmate to be placed in administrative segregation, a hearing must be held to give the inmate an opportunity to rebut the reasons for his placement, and approval for placement on this status must come from the Director of Offender Classification and Population Management, or a higher authority within DOC. Inmates assigned to administrative segregation can remain on that status indefinitely until their behavior changes to a degree that placement in a general inmate population becomes appropriate. Inmates on administrative segregation are reviewed for reclassification every seven days for the first two months and every thirty days thereafter, and

may be released from this status only by approval of the Commissioner of DOC or his designee. The plaintiff remained on administrative segregation during much of the time he spent at Northern.

9. Over time, the plaintiff progressed through the various phases of the administrative segregation program, and was transferred from administrative segregation to the general population at MacDougall Correctional Institution on October 5, 2000. From March 23, 2001 until the present, except for periods when he returned to New Hampshire to attend to legal matters in his home state, Mr. Reid has been housed at several Level 4, maximum security facilities in Connecticut. See RT 60, Ex. 5. The inmate housing records for Mr. Reid show frequent returns to his home state to attend to legal matters.

10. Although he has progressed out of the administrative segregation program, Mr. Reid has continued to engage in violent, disruptive behaviors. On February 14, 2000, Mr. Reid assaulted his cellmate at Northern, resulting in administrative sanctions. See Incident Report and Disciplinary Report, Ex. 7. His most recent assault occurred just this month, when he repeatedly assaulted a fellow inmate, punching the inmate with closed fists in the head and face.

11. In addition to the challenges posed to correctional officials by his violently assaultive history, Mr. Reid has a history of a sexual offense. Mr. Reid is classified as having a sexual risk score of 3, which means that he may only be placed in a halfway house with the consent of the DOC Commissioner. Currently, it is the practice of the DOC not to allow individuals with a sexual risk score of 3 or above to be placed in the community.

12. With a current maximum release date in 2019, no firm parole date from the New Hampshire Board of Parole and a significant history of assaultive behavior, Mr. Reid is

considered by Connecticut DOC officials to be a maximum security inmate, and therefore is held in maximum security facilities.

13.     Although the plaintiff is a sentenced inmate from the State of New Hampshire, the plaintiff is subject to the inmate classification, discipline and general custody rules of the Connecticut Department of Correction. The Contract for the Implementation of the Interstate Corrections Compact between the states of Connecticut and New Hampshire expressly provides that:

> It shall be the responsibility of the administration of the institution in the receiving state to confine inmates from a sending state; to give them care and treatment, including the furnishings of subsistence and all necessary medical and hospital supplies; to provide for their physical needs; to make available to them programs of training and treatment which are consistent with their individual needs; to retain them in safe custody; to supervise them; to maintain proper discipline and control; to make certain that they receive no special privileges and that the sentences and orders of the committing court in the sending state are faithfully executed. But nothing herein shall be construed to require the receiving state or any of institutions to provide treatment, facilities or programs for any inmate confined pursuant to the Interstate Corrections compact which it does not provide for similar inmates not confined pursuant to said Compact.

The Contract further provides that all inmates "while in the custody of the receiving state shall be subject to all the provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed."

14.     The Connecticut DOC inmate classification guidelines prohibit incarceration of individuals with the plaintiff's history and present duration of sentence in a less secure environment.

15.     With respect to inmates transferred from New Hampshire to other jurisdictions, the New Hampshire DOC's inmate classification procedures defer authority to make such classifications to the receiving state.

16. The plaintiff has been denied parole on one occasion, and he has been informed by the New Hampshire Adult Parole Board that he will not be considered for parole until he obtains a halfway house placement and completes anger management classes.

17. Mr. Reid also has been advised that a reduced custody level is viewed by New Hampshire authorities as a "privilege."

18. The plaintiff is not entitled to parole in New Hampshire. The decision to release any convict on parole is a purely discretionary matter, with that discretion resting solely with the New Hampshire Adult Parole Board.

19. At all relevant times, it was within the discretion of the Connecticut Department of Correction to assign security risk classification scores as they deem appropriate.

20. The classification procedures employed by the Connecticut Department of Correction do not create any constitutionally protected rights.

## VI.     PLAINTIFF'S CONTENTIONS

VII.  **DEFENDANTS' CONTENTIONS**

See Section V, supra.

VIII. **LEGAL ISSUES**

1. Whether the plaintiff has a cognizable Fourteenth Amendment right to a certain inmate classification.

2. Whether the plaintiff has suffered a violation of his right to Equal Protection.

3. Whether the housing of the plaintiff at the Corrigan Correctional facility constituted a violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

4. Whether the defendants are entitled to qualified immunity.

IX.  **VOIR DIRE QUESTIONS**

1. Please state where and in what capacity you and each member of your household is employed.

2. Have you ever served on a jury before? If so, please identify the location and nature of the case or cases on which you served.

3. Have you or any member of your household ever been a party to a lawsuit? If so, please explain.

4. Do you, or does any member of your family know the plaintiff, defendants, or any of the named witnesses.

5. This case involves a claim, made by a sentenced prisoner, confined to the custody of the Department of Correction, regarding alleged violations of his constitutional rights by Department of Correction employees. Have you or has any member of your family had any

experience with any officer or employee of the State of Connecticut which would prevent you from considering the evidence impartially and fairly?

  6.  The Court will instruct you on the law which you are to apply to the facts as you find them. One of these instructions will be that the burden of proof on all material facts rests on the plaintiff. Does anyone believe that they will have trouble accepting that instruction?

  7.  Do you know anything about this case which would prevent you from deciding this case based upon the evidence and the Court's instructions?

  8.  Have you, or has any member of your family or any person close to you, ever been arrested by a police officer?

  9.  Have you, or has any member of your family, ever filed a formal or informal complaint against a police officer? Against a correction officer? If so, please describe the circumstances surrounding the complaint and the outcome thereof.

  10.  Have you, or has any member of your family ever felt that your or their constitutional rights were violated by a police officer or a correction officer? If so, please explain the circumstances.

  11.  Have you ever been arrested? Held in jail? Visited someone in jail? If so, so you feel that this fact would influence your ability to render an impartial verdict in this case?

  12.  Have you, or has any member of your family ever been employed as a law enforcement official? If so, please explain in what capacity and what the circumstances were, if any, which lead to the termination of that employment.

  13.  Do you believe that, in general, correction officers have a tendency to abuse their authority for no good reason?

14. Do you or does anyone you know work for the State of Connecticut? If so, who? In what capacity?

15. Have you ever been a victim of crime? If so, describe the circumstances. Could you still be fair and impartial and decide the case solely on the evidence?

16. Have you ever witnessed a crime?

17. Do you feel that the State's criminal justice system has broken down and that the criminals have more rights than the victims? Could you put aside your personal feelings and beliefs and decide the case fairly – only on the evidence in the case?

18. Do you feel that whatever risks, injuries or harms a prisoner may face are part of the punishment he received for having been convicted of a crime?

19. Do you feel that the State's prisons routinely subject prisoners to inhumane treatment or excessive punishment?

20. Do you know any of the parties or attorneys in this case?

21. Are you or is any member of your family an attorney?

22. Do you or does nay member of your family work for an attorney?

23. Have you or has any member of your family ever been sued by the State of Connecticut or any other governmental agency?

24. Have you or has any member of your family ever brought suit against the State of Connecticut or any other governmental agency?

X.  **PLAINTIFF'S WITNESSES**

XI.  **DEFENDANTS' WITNESSES**

In addition to the defendants, the following are likely to testify as witnesses:

1. Fred Levesque, 1153 East Street South, Suffield, CT 06080, will testify concerning the inmate classification process in the Connecticut Department of Correction and the classification of the plaintiff and other inmates during the relevant time period.

2. Lynn Milling, 1153 East Street South, Suffield, CT 06080, will testify concerning the housing and classification of inmates who come to Connecticut from other correctional systems as well as the inmate classification process in the Connecticut Department of Correction and the classification of the plaintiff and other inmates during the relevant time period.

The defendants reserve the right to call rebuttal witnesses and to list other witnesses in response to those identified by the plaintiff.

XII. **EXHIBITS**

    1. New Hampshire Mittimus

    2. Plaintiff's New Hampshire Disciplinary Records

    3. Plaintiff's Connecticut Disciplinary Records

    4. Plaintiff's Objective Classification Sheets

    5. New Hampshire Referral Summary

    6. DOC RT 60 Record of Inmate Movements

    7. DOC Restrictive Housing Status Chart

    8. DOC RT 67 Inmate Disciplinary Report

    9. Interstate Compact – Implementation Contract

    10. Relevant Portions of New Hampshire Classification Manual

    11. Parole Board Decision

    12. 3/6/03 Letter from Denise Heath to Plaintiff

    13. New Hampshire Code of Administrative Rules for Adult parole Board, Part 301

    14. DOC Objective Classification Manual

    15. DOC Administrative Directive Re: Inmate Classification

The defendants reserve the right to offer rebuttal exhibits and to supplement this list to respond to exhibits identified by the plaintiff.

XIII. **DEPOSITION TESTIMONY**

Not applicable.

XIV. **JURY INSTRUCTIONS**

See attached.

### XV. ANTICIPATED EVIDENTIARY PROBLEMS

None at this time.

### XVI. PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Not applicable.

### XVII. TRIAL TIME

The defendants estimate that trial will take three days, exclusive of jury selection. It should be noted that the plaintiff currently is an incarcerated offender in the State of New Hampshire and as such is not presently amenable to subpoena or habeas corpus in a civil proceeding in this district.

### XVIII. FURTHER PROCEEDINGS

None.

### XIX. ELECTION FOR TRIAL BY MAGISTRATE

The defendants are willing to stipulate to a trial by a magistrate judge with any appeal to be heard by the Court of Appeals.

> DEFENDANTS
> JOHN ARMSTRONG, ET AL.
>
> RICHARD BLUMENTHAL
> ATTORNEY GENERAL
>
> BY: _____/s/_____
> Terrence M. O'Neill
> Assistant Attorney General
> 110 Sherman Street
> Hartford, CT  06105
> Federal Bar #ct10835
> E-Mail:  terrence.oneill@po.state.ct.us
> Tel.: (860) 808-5450
> Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 12th day of December, 2006:

Robert Reid, No. 18258
Northern Correctional Facility
138 East Milan Road
Berlin, NH 03570

_____/s/_____
Terrence M. O'Neill
Assistant Attorney General