UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT REID<br>*PLAINTIFF* : | CIVIL ACTION NO. 3:03CV208 (JCH) |
| : | |
| V. : | |
| : | |
| JOHN ARMSTRONG, ET AL., :<br>*DEFENDANTS* : | JUNE 18, 2004 |

### AFFIDAVIT OF MAJOR LYNN MILLING

I, Lynn Milling, do hereby depose and say that:

1. I am over the age of eighteen and understand the obligations of an oath.

2. Since 1980, I have been employed by the Department of Correction and currently hold the rank of Major. I have been the supervisor of the interstate compact office since September 1990, overseeing issues pertaining to Connecticut inmates transferred to other states and out of state inmates transferred to Connecticut. I was involved in the arrangements leading to the transfer of Mr. Reid from New Hampshire, have served as a liaison between Connecticut DOC and New Hampshire DOC on issues relating to Mr. Reid's incarceration, and have reviewed his New Hampshire disciplinary and classification materials. As such, I am familiar with the facts stated herein.

3. Sometime in December 1997, the New Hampshire Department of Correction contacted our office seeking to transfer Mr. Reid to Connecticut. The reason given by New Hampshire for seeking the transfer was because Mr. Reid needed a "fresh start."

4. Pursuant to the written agreement between Connecticut and New Hampshire, issues pertaining to classification of inmates are governed by the rules and regulations of the receiving state. Thus, when in Connecticut, Mr. Reid's classification as an inmate is governed by the directives and procedures of the Connecticut Department of Correction.

5. As part of the process leading up to the transfer, New Hampshire sent to me a copy of Mr. Reid's disciplinary history and related documents. In New Hampshire, Mr. Reid was classified as a C-5 (maximum) inmate, the highest inmate classification, and was housed in New Hampshire's restrictive housing unit. Moreover, Mr. Reid amassed an extensive disciplinary history in New Hampshire dating back to 1989. His history in New Hampshire includes reports for threatening, having illicit substances in his urine, possession of escape implements, possession of a weapon, disruptive conduct, fighting, causing bodily injury, and striking another person. His history of assaulting staff and other inmates includes throwing unknown liquids on staff, digging his nails into a staff member, striking staff, attempting to bite staff, and stabbing a staff member near the eye with a fork.

6. Based upon my review of the New Hampshire materials, on February 20, 1998 (three days before his arrival in Connecticut) I recommended that Mr. Reid be placed in administrative segregation at Northern Correctional Institution.

7. The ultimate decision to place Mr. Reid in administrative segregation was made by Fred Levesque, the Director of Offender Classification and population management, after a hearing where Mr. Reid had knowledge of the reasons for his placement in administrative segregation and an opportunity to refute those reasons.

8. On April 14, 1999, Mr. Reid returned to New Hampshire for reasons unrelated to his Connecticut placement. At the time of his return to New Hampshire, Mr. Reid was still in administrative segregation at Northern CI.

9. Sometime in November 1999, New Hampshire contacted the Interstate Compact Office requesting that Mr. Reid return to Connecticut. As part of the transfer process, New Hampshire sent to me disciplinary records describing Mr. Reid's behavior while in New Hampshire from April through November 1999. In reviewing these records, I learned that, during the time he had returned to New Hampshire, Mr. Reid received several disciplinary reports, including one for assaulting correctional officers by throwing urine into their faces, and one for another occasion when he barricaded himself into his cell and assaulted correctional officers who tried to extricate him. I relayed this information to the warden at Northern CI, where plaintiff was to return upon his arrival from New Hampshire.

10. Since his return to Connecticut in December 1999, Mr. Reid has returned to New Hampshire on several occasions, and while in Connecticut has always been either an administrative segregation inmate at the Northern Correctional Institution or a maximum security inmate at one of Connecticut's maximum security facilities.

11. Mr. Reid currently is housed at the Garner Correctional Institution in Newtown, Connecticut, a maximum security facility, with a maximum release date in the year 2019.

12. Under Connecticut Department of Correction policies and procedures, Mr. Reid is not eligible for a reduction in his security risk level that would allow him to be considered for community release or a halfway house placement. In order for Mr. Reid to qualify for such a

placement, he would either have to be within 18 months of discharging from his sentence or have a firm "voted to parole" date. With respect to the "voted to parole" date, Mr. Reid would actually have to be voted to parole by the New Hampshire Parole Board after they had considered his application and deemed that he was entitled to parole, and Mr. Reid would have to be within eighteen months of the date designated by New Hampshire for actual release on parole. Mr. Reid is not within 18 months of discharging from his sentence, nor has he been voted to parole by New Hampshire paroling authorities.

13. In addition, Mr. Reid is not eligible for community placement in Connecticut because he has a conviction for sexual assault in New Hampshire in 1983. Under Connecticut's classification procedures, Mr. Reid may not be placed in a community placement without the express consent of the Connecticut DOC Commissioner. To my knowledge, no inmate with a conviction for sexual assault has ever received the consent of the Commissioner to be housed in a community release or halfway house setting.

14. In my capacity as supervisor of the Interstate Compact Office, it has been my experience that most states have different criteria for classifying inmates. It is not at all unusual for an inmate from out of state to be housed in a different type of facility than he otherwise would have been had the inmate remained in his own state. Indeed, the availability of alternative placements and environments is often the reason for transferring inmates out of state. Mr. Reid's assaultive behavior while in New Hampshire is evidence of such an inmate who is transferred out of state because he cannot be adequately managed in his home state.

_____
Major Lynn Milling

Subscribed and sworn to before me this 18th day of June, 2004.

_____
~~Notary Public~~/Commissioner of the Superior Court