CONTRACT FOR THE IMPLEMENTATION OF
THE INTERSTATE CORRECTIONS COMPACT

In consideration of the cooperative relationship herewith undertaken in the confinement, care, treatment and rehabilitation of inmates on an interstate basis and in further consideration of services to be performed and benefits to be derived by each of the parties hereto in the strengthening of their respective correctional programs, the State of Connecticut and the State of **New Hampshire** acting herein by their duly constituted authorities, and pursuant to and to implement the Interstate Corrections Compact enacted by each of the parties herewith do hereby covenant and agree as follows:

1. Interstate Corrections Compact

The provisions of the Interstate Corrections Compact are hereby made an integral part of this contract and no provision of this contract shall be construed in any manner inconsistent with said Compact.

2. Governing Law

Except where expressly otherwise provided, the laws and administrative rules and regulations of the sending state shall govern in any manner relating to an inmate confined pursuant to this contract and the Interstate Corrections Compact.

3. Terminology

All terms defined in the Interstate Corrections Compact and used in this contract shall have the same meanings in this contract as in said Compact. The terms "sending state" and "receiving state" shall be construed to include and refer to the appropriate official or agency thereof in each particular case.

4. Duration

This contract shall enter into full force and effect on 7/1/85 and shall terminate in accordance with paragraph 5.

5. Termination

This agreement may be terminated by notice of either party. That termination shall become effective ninety (90) days after receipt of said notice. Within a reasonable time of receipt of said notice, the sending state shall accept delivery of its inmates at the institution designated by the receiving state.

## 6. Other Arrangements Unaffected

Nothing contained in this contract shall be construed to abrogate or impair any agreement or contract for the confinement, rehabilitation or treatment of inmates now in effect between the parties to this contract.

## 7. Mailing Addresses

All notices, reports and correspondence to the respective states to this contract shall be sent to the following:

Cynthia T. Morse                    Mary Keniston
Supervisor of Interstate Matters    Deputy Compact Administrator
Department of Correction            Department of Correction
340 Capitol Avenue                  P.O. Box 769
Hartford, CT 06106                  Concord, New Hampshire 03301

## 8. Right of Inspection

The sending state shall have the right to inspect, at all reasonable times, any institution of the receiving state in which inmates of the sending state are confined in order to determine if that institution maintains standards of care and discipline not incompatible with those of the sending state and that all inmates therein are treated equitably, regardless of race, religion, color, creed or national origin.

## 9. Vacancies

The receiving state hereby undertakes to make available to the sending state such places for inmates as may be vacant from time to time in any and all institutions of the receiving state made available for such confinement by the laws of the receiving state.

## 10. Application

The sending state will submit a separate application to the receiving state for each individual inmate proposed for commitment.

Said application shall consist of the following: Full information and all necessary documents relating to the case history, physical and clinical record, judicial and administrative rulings and orders relating or pertinent to the inmate and the sentence or sentences pursuant to which confinement is to be had or to continue, and reasons for the requested transfer.

Commitment will be deferred until approved by the receiving state.

## 11. Delivery of Inmate

Upon receipt of the acceptance of the application the sending state at its expense will deliver the inmate to the institution in the receiving state designated by the receiving state, together with the original or a duly authenticated copy of his commitment, and any other official papers or documents authorizing detention.

Whenever there is to be a mutual exchange of inmates between the parties to this contract, the authorities of one of the states may act as the agent of the other state for purposes of transferring its inmates so that the expenses to both states may be minimized.

## 12. Transfer of Funds

Funds due transferred inmates shall be provided by the sending state to be credited to the account of the transferred inmate in the receiving state. Upon the return of the inmate to the sending state, or upon his release, the receiving state shall provide funds in the amount due the inmate at the time of return or release.

## 13. Responsibility for Offenders Custody

It shall be the responsibility of the administration of the institution in the receiving state to confine inmates from a sending state; to give them care and treatment, including the furnishing of subsistence and all necessary medical and hospital services and supplies; to provide for their physical needs; to make available to them the programs of training and treatment which are consistent with their individual needs; to retain them in safe custody; to supervise them; to maintain proper discipline and control; to make certain that they receive no special privileges and that the sentences and orders of the committing court in the sending state are faithfully executed. But nothing herein contained shall be construed to require the receiving state or any of its institution to provide treatment, facilities or programs for any inmate confined pursuant to the Interstate Corrections Compact which it does not provide for similar inmates not confined pursuant to said Compact.

## 14. Medical Services

(a) Inmates from the sending state shall receive such medical, psychiatric and dental treatment as may be necessary to safeguard their health and promote their adjustment as self-supporting members of the community upon release. Unless an emergency is involved, the receiving state shall contact the sending state for advance authority in writing before incurring medical, psychiatric, or dental expense for which the sending state is responsible under the terms of this contract. In an emergency, the receiving state may proceed with the necessary treatment without prior authority, but in every such case the receiving state shall notify the sending state immediately and furnish full information regarding the nature of the illness, the type of treatment to be provided and the estimated cost thereof.

(b) When medical, psychiatric or dental care or treatment requires the removal of the inmate from the institution, the inmate shall be removed only after notification to the sending state. In the event of an emergency which does not permit prior notification, the institution shall notify the sending state as promptly thereafter as practicable. All necessary precautions shall be taken to assure the safe-keeping of the inmate while he is absent from the normal place of confinement. Necessary custodial supervision shall be provided by the receiving state.

-4-

(c)  Any costs of medical, psychiatric or dental service shall be considered normal costs incidental to the operation of the institution in the receiving state if the service is rendered by staff personnel and in regularly maintained facilities operated or utilized by the institution as part of the health or correctional program thereof and if the inmate requires no special medication, drugs, equipment, anesthetics, surgery or nursing care in addition to that commonly available on an infirmary basis.  The costs of any extraordinary services, medication, equipment, surgical, or nursing care shall be chargeable to the sending state.

15.  Training or Employment

(a)  Inmates from the sending state shall be afforded the opportunity and shall be required to participate in programs of occupational training and industrial or other work on the same basis as inmates of the receiving state. Compensation in connection with any such participation (whether as payment, incentive, or for any other therapeutic or rehabilitative reason) shall be paid to inmates of the sending state on the same basis as to inmates of the receiving state.  Any such inmates of the sending state shall be subject to the regular work discipline imposed upon other inmate participants in the particular program.  However, nothing contained herein shall be construed to permit or require any inmate of a sending state to participate in any training, industrial or other work program contrary to the laws of the sending state.

(b)  The receiving state shall have the right to dispose of all products produced by an inmate, shall retain all proceeds therefrom, and shall bear all costs of said program.

(c)  In the case of handicraft or hobbycraft programs, the inmate shall have the right to dispose of the products of his labor and to retain the proceeds of any sale of his work in accordance with the rules of the receiving state.

16.  Discipline

The receiving state, as agent for the sending state, shall have physical control over and power to exercise disciplinary authority over all inmates from sending states.  However, nothing contained herein shall be construed to authorize or permit the imposition of a type of discipline prohibited by the laws of the sending state.

17.  Laws and Regulations

Inmates while in the custody of the receiving state shall be subject to all the provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed.

18. <u>Records and Reports from Receiving State</u>

(a)  Within          days following the receipt of an inmate from the
sending state, the receiving state shall furnish an admission classification report
outlining the inmate's social background, medical, psychiatric, education and voca-
tional findings and indicating the institutional program which has been recommended.
Thereafter, preferably at intervals of six months, but at least annually, the re-
ceiving state shall furnish the sending state a report giving a summary of the
inmate's progress and adjustment since the last report, including a recommendation
for retention or return.  All such reports shall be forwarded to the sending state.

(b)  The superintendent or other administrative head of an institution,
in which inmates from sending states are confined, shall keep all necessary and
pertinent records concerning such inmates in a manner agreed between the sending and
receiving states.  During the inmates' continuance in the institution, the sending
state shall be entitled to receive, and upon request shall be furnished, with copies
of any such record or records.  Upon termination of confinement in the institution,
the sending state shall receive the complete file of the inmate.  But nothing here-
in contained shall be construed to prevent the receiving state or any institution
thereof from keeping copies of any such record or records upon and after termination
of confinement.

19. <u>Removal from Institution</u>

An inmate from the sending state legally confined in the institutions
of the receiving state shall not be removed therefrom by any person without an order
from the sending state.  This subdivision shall not apply to an  emergency necessi-
tating the immediate removal of the inmate for medical, dental or psychiatric treat-
ment or to a removal made necessary by fire, flood, earthquake or other catastrophe
or condition presenting imminent danger to the safety of the inmate.  In the case
of any removal for such emergency cause, the receiving state shall inform the send-
ing state of the whereabouts of the inmate or inmates so removed at the earliest
practicable time, and shall exercise all reasonable care for the safekeeping and
custody of such inmate or inmates.

20. <u>Hearings</u>

The receiving state shall provide adequate facilities for any hearing
by authorities of the sending state, to which an inmate may be entitled by the laws
of the sending state.  Upon the request of the sending state, the authorities of the
receiving state will be authorized to and will conduct any such hearings, prepare
and submit the record of said hearings, together with any recommendations of the
hearing officials, to the officer or officers of the sending state before whom the
hearing would have been had if it had taken place in the sending state.

21. <u>Inter-institutional Transfers</u>

Notwithstanding any provision herein to the contrary, the receiving
state may transfer an inmate from one institution under its control to another
whenever it deems such action appropriate.  Notice of such transfer shall immediately
be sent to the sending state.

22. Escape

In case of any such inmate shall escape from custody in the receiving state, that receiving state will use all reasonable means to recapture the inmate. The escape shall be reported immediately to the sending state. The receiving state shall have the primary responsibility for the authority to direct the pursuit and retaking of inmates within its own territory. Any costs in connection therewith shall be chargeable to and borne by the receiving state.

23. Death of Inmate

(a) In the event of the death of an inmate from a sending state, the medical examiner, coroner or other official having the duties of such an officer in the jurisdiction shall be notified. The sending state shall receive copies of any records made at or in connection with such notification.

(b) The institution in the receiving state shall immediately notify the sending state of the death of an inmate, furnish information as requested, and follow the instructions of the sending state with regard to the disposition of the body. The body shall not be released except on order of the appropriate officials of the sending state. All expenses relative to any necessary preparation of the body and shipment or express charges shall be paid by the sending state. The sending and receiving states may arrange to have the receiving state take care of the burial and all matters related or incidental thereto and all such expenses shall be paid by the sending state. The provisions of this paragraph shall govern only the relations between or among the party states and shall not affect the liability of any relative or other person for the disposition of the deceased or for any expenses connected therewith.

(c) The sending state shall receive a certified copy of the death certificate for any of its inmates who have died while in the receiving state.

24. Gratuities and Expenses Attendant Upon Release

The provision of clothing, gratuities and any other supplies upon release of an inmate shall be at the expense of the sending state and shall be in accordance with its laws.

25. Retaking of Inmates

The receiving state will deliver any of said inmates to the proper officials of the sending state upon demand made to the receiving state and presentation of official written authority to receive said inmate.

The sending state will retake any inmate, upon the request of the receiving state, within thirty (30) days after receipt of the request to retake.

In case the commitment under which any of said inmates is terminated for any reason, the sending state agrees to accept delivery of the inmate at the institution of the receiving state, and at its expense return him to the jurisdiction

of the sending state. However, by agreement among the sending and receiving states and the inmate, at the termination of his confinement by reason of discharge, conditional or otherwise, he may be released within the jurisdiction of the receiving state.

### 26. Photographing and Publicity

Institutional or other officials of the receiving state shall not be authorized to release publicity concerning inmates from the sending state. They shall not release personal histories or photographs of such inmates or information concerning their arrival or departure or permit reporters or photographers to interview or photograph such inmates. Requests for information regarding inmates of sending states shall be referred to the sending state. However, information of public record, such as sentence data or information concerning the escape of an inmate may be given directly to the press by the receiving state. The receiving state may photograph inmates from the sending state as a means of identification for official use only.

### 27. Costs and Reimbursement

In addition to costs and reimbursement required by other provisions of this contract, the sending state shall pay to the receiving state for the custody treatment and rehabilitation of each transferred inmate the sum of  0.00 dollars per day; except that there shall be no reimbursement if there is an equal exchange of prisoners among the contracting states, for the duration of the period of the exchange. The sending state shall be billed monthly for such costs.

### 28. Transportation

Any and all costs of transportation incurred prior to admission to an institution in the receiving state, and transportation at the time of, or as an incident to release or discharge, conditional or otherwise, shall be charged to the sending state.

### 29. Responsibility for Legal Proceedings

The transfer of an inmate pursuant to this contract shall not effect the obligation of the states involved to provide legal representation for state officers and to respond to any relief which may be involved. Legal representation other than as stated herein shall be available only upon the consent of the state involved.

### 30. Discrimination

The contractor agrees and warrants that in the performance of this contract he will not discriminate or permit discrimination against any person or group of persons on the grounds of race, color, religious creed, age, marital status national origin, sex, MENTAL RETARDATION or physical disability, including, but not limited to, blindness, unless it is shown by such contractor that such disability

-8-

prevents performance of the work involved in any manner prohibited by the laws of the United States or of the State of Connecticut. If the contract is for a public works project, the contractor agrees and warrants that he will make good faith efforts to employ minority business enterprises as subcontractors and suppliers of materials on such project. The contractor further agrees to provide the Commission on Human Rights and Opportunities with such information requested by the Commission concerning the employment practices and procedures of the contractor as relate to the provisions of this section and section 46a-56 as amended.

"This contract is subject to the provisions of the Executive Order No. Three of Governor Thomas J. Meskill promulgated June 16, 1971 and, as such, this contract may be cancelled, terminated or suspended by the State Labor Commissioner for violation of or noncompliance with said Executive Order No. Three, or any state or federal law concerning nondiscrimination, notwithstanding that the Labor Commissioner is not a party to this contract. The parties to this contract, as part of the consideration hereof, agree that said Executive Order No. Three is incorporated herein by reference and made a part hereof. The parties agree to abide by said Executive Order and agree that the State Labor Commissioner shall have continuing jurisdiction in respect to contract performance in regard to non-discrimination, until the contract is completed or terminated prior to completion."

"This contract is subject to the provisions of Executive Order No. Seventeen of Governor Thomas J. Meskill promulgated February 15, 1973, and as such, this contract may be cancelled, terminated or suspended by the contracting agency or the State Labor Commissioner for violation of or noncompliance with said Executive Order No. Seventeen is incorporated herein by reference and made a part hereof. The parties agree to abide by said Executive Order and agree that the contracting agency and the State Labor Commissioner shall have joint and several continuing jurisdiction in respect to contract performance in regard to listing all employment openings with the Connecticut State Employment Service."

### 31. Internal Relations

Nothing in this contract shall be construed to affect the internal relationships between or among the party states and their subdivisions, officers, departments or agencies, but each party state undertakes and acknowledges liability and responsibility for making each other party state whole in respect of any obligation imposed upon it by or pursuant to this contract.

### 32. Performance

Performance under the terms of this contract will not begin until said contract has been approved by the department of Finance and Control and the Attorney General with the State of Connecticut.

Statutory Authority:   Public Act 73-354 (1973 Session) General
                       Assembly, State of Connecticut.


        IN WITNESS WHEREOF, The undersigned duly authorized
officers have subscribed their names on behalf of the State of
Connecticut and the State of **New Hampshire**      , this *3rd*
day of _____*may*_____ 19 *85*.


STATE OF CONNECTICUT                    STATE OF ____New Hampshire____
DEPARTMENT OF CORRECTION


_____               _____
Commissioner                            Commissioner

Date: _____4/22/85_____               Date: _____5/3/55_____


APPROVED: _____

_____
Office of Policy and Management

Date: __JUL 3 1985__                    Date: _____


Approved As To Form

_____               _____
**DEPUTY**  Attorney General

Date: __JUL 5 1985__                    Date: __May 17, 1985__