UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT REID | : | |
|     Plaintiff. | : | DOCKET NO. 3:03-CV-208(WWE) |
| | : | |
| v. | : | |
| | : | |
| JOHN ARMSTRONG, ET AL., | : | |
|     Defendants. | : | SEPTEMBER 12, 2008 |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. **FACTUAL BACKGROUND**

    The facts of this case are fairly simple and straightforward. In 1989, a New Hampshire court sentenced plaintiff to an indeterminate term of imprisonment between 10 and 30 years. (Complaint ¶ 10.) In 1998, plaintiff was involuntarily transferred from a correctional institution in New Hampshire to a correctional institution in Connecticut, pursuant to the New England Interstate Corrections Compact (NEICC). (See exhibit 2, ¶ 6, defendants' memorandum of law in support of motion for summary judgment.) Upon arrival in Connecticut, and at all times subsequent thereto, plaintiff was classified according to the strictest guidelines. (Id., see also exhibits G, I and K attached to plaintiff's complaint.)

1

According to New Hampshire law, Mr. Reid was eligible for parole on February 16, 2002, provided he met certain conditions, including placement in a halfway house and completion of an anger management course. (See exhibits 12 and 16 to defendants' memorandum of law in support of motion for summary judgment.) In August of 2002, the New Hampshire Adult Parole Board conducted a hearing concerning Mr. Reid's application for parole. (See defendants' exhibit 12 and plaintiff's complaint ¶ 17.) The application was denied. The parole board indicated that it would rehear the parole application after Mr. Reid met two conditions: (i) participation in an anger management program; and (ii) when Mr. Reid was in a halfway house. (See defendant's exhibit 12.) However, according to Connecticut laws and regulations, Mr. Reid was not eligible for a halfway house as he was not within 18 months of the expiration of his term of imprisonment, nor was he eligible for an anger management program as his classification level was too high. (Complaint ¶¶ 17-20 and complaint exhibits G, I and K.) Furthermore, Mr. Reid would never be eligible for either of the prerequisites. Id. However, had Mr. Reid, in August of 2002, been in a New Hampshire correctional facility, he would have been eligible for placement in a halfway house and an anger management program, which, of course, would have made him eligible for parole. (See complaint, ¶ 26 and accompanying authoritative citations to New Hampshire law and regulations.) The only impediment to parole eligibility was the fact that the laws of Connecticut and the regulations of the Connecticut Department of Correction prevented Mr. Reid from placement in a halfway house. As a result, the defendant's

failure to provide Mr. Reid the same rights as those secured and accorded to New Hampshire inmates violated equal protection and due process.

## II. ARGUMENT

### A. Summary Judgment Standard

A motion for summary judgment "may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." Brown v. Pannozzo, 2007 WL 2874795 *1 (D. Conn. 2007). "An issue is 'genuine…if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. at *2 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In determining whether a case presents any triable issues of fact the court "may not make credibility determinations or weigh the evidence, and [the court] must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." Id. (citations omitted). "Summary judgment is not appropriate where a review of the record reveals sufficient evidence for a rational trier of fact to find in the plaintiff's favor." Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007)(citations omitted). The burden of showing no genuine factual dispute rests with the moving party. Harp v. Destefano, 2007 WL 2869831 *3 (D. Conn. 2007).

B. **The New England Interstate Corrections Compact And The Contract Signed Between Connecticut And New Hampshire Regarding The Enactment Of The NEICC, Provides That Any Inmate Transferred Pursuant To The NEICC Retains The Same Rights As He Or She Would Have If Incarcerated In The State Of Conviction**

According to the NEICC, inmates "confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state…for release on probation or parole." CGSA § 18-192, Article IV, section (c). Additionally, "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution in the sending state." Id. Section (e).

The compact provides that any hearings which an inmate may be entitled to may be conducted in the receiving state, and the law governing such hearings is that of the sending state. Id. Section (f). Section (h) states that an "inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and to derive any benefits or to…have his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state."  Lastly, it is worth noting that the "provision of [the] compact shall be liberally construed." Id. Article X.

The Contract for the Implementation of the Interstate Corrections Compact, Defendant's exhibit 10, specifically guarantees Mr. Reid the rights he would possess if he were in New

4

Hampshire. Section 2 of the contract, titled "governing law" specifically states that "the laws and administrative rules and regulations of the sending state shall govern in any manner relating to an inmate confined pursuant to this contract and the Interstate Corrections Compact."[1]

### C. Defendants Violated Plaintiff's Right To Equal Protection When Defendants Failed to Accord Mr. Reid Parole Eligibility Rights As He Would Have If He Had Been Incarcerated In New Hampshire

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985)(internal quotations and citations omitted). In order to justify the disparate treatment of similarly situated individuals, the state must demonstrate that the difference at issue bears a rational relation to some legitimate end. Id.

In this case, Mr. Reid was treated substantively different from inmates incarcerated in New Hampshire, without any reason other than the fact that he was in Connecticut. (See exhibit J to plaintiff's complaint.) Indeed, the defendants' offer no reason at all for the disparate treatment. Instead, defendants point to Mr. Reid's disciplinary record and criminal history. However, the reliance on Mr. Reid's disciplinary record and criminal history is a red herring because it is

---

[1] The contract between New Hampshire and New York is the same. Smart v. Goord, 21 F. Supp 309, 313 (S.D.N.Y. 1998)

undisputed that if Mr. Reid had he been in New Hampshire, despite the disciplinary record and criminal history, he would have been eligible for the conditions precedent for his application for parole.

It was, rather, Connecticut guidelines that prevented Mr. Reid from ever obtaining residence in a halfway house and an anger management program. In other words, there is nothing Mr. Reid could have done to obtain placement in a halfway house, and thereby meet the conditions precedent for parole eligibility. (See complaint exhibits G, I and K.) The refusal to consider Mr. Reid for a halfway house directly violates Mr. Reid's equal protection and due process rights because under the laws of New Hampshire, Mr. Reid would have been eligible for release to a halfway house. That is to say, if Mr. Reid were incarcerated in New Hampshire, at least he would have been considered for such release to a half way house. Instead, because Mr. Reid was incarcerated in Connecticut he could never obtain the conditions necessary for consideration for parole, and was therefore treated substantively different from other inmates of New Hampshire.

It is agreed that a prisoner does not have a right to parole. However, certainly both Connecticut and New Hampshire have provided inmates a right to apply for parole. That is to say, if a prisoner meets the circumstances necessary for parole eligibility the state cannot deny the prisoner a hearing concerning the application for parole. Of course, the state could deny the parole, but that is not the question in this case. The question here is whether Mr. Reid was accorded his rights under the equal protection clause. He was not. Here, because Mr. Reid was

incarcerated in Connecticut, and because of Connecticut's regulations regarding placement in a halfway house were more strict and stringent than the halfway house placement regulations of New Hampshire, Mr. Reid was denied equal protection of the law.[2]

According to the August 2002 decision by the New Hampshire parole board, plaintiff was to complete an anger management course and obtain placement in a halfway house before being considered for parole. (Defendants' exhibit 12.) However, not only was Mr. Reid prevented from applying for a halfway house in Connecticut, something he would have been eligible for had he been in New Hampshire, but he was prevented from taking an anger management course as required by New Hampshire, again denied by Connecticut strictly because of the classification as promulgated by Connecticut. (See complaint exhibits G, I, J, and K.)

As plaintiff stated in ¶ 20 of the complaint: "Plaintiff has requested to progress through the levels in order to meet the conditions set by the [New Hampshire] parole board, and he cannot achieve parole without first succeeding to a minimum security placement, petitioner's per se ineligibility for minimum security in Connecticut is dispositive of his fate as to parole." Furthermore, Plaintiff recognized such placement would not have guaranteed parole, but that it was a "necessary prerequisite for consideration for parole." Id. ¶ 21.

Indeed, plaintiff "would again emphasize that it is the direct relationship of the state of Connecticut's Department of Correction denial of his potential eligibility of the minimum

---

[2] The acts of defendants also violated the provision of the NEICC, Article IV, Sections (a), (c), (e), and (f), among others, in that Connecticut did not accord Mr. Reid his rights secured pursuant to the NEICC.

security classification in relationship to his parole that creates a liberty interest for plaintiff." (Complaint ¶ 29.) Moreover, according to Connecticut regulations, Mr. Reid was not eligible for a halfway house until he attained "level 2" status, something which by its very nature is foreclosed to plaintiff. (See complaint exhibits G, I, and K.)

      Mr. Reid inquired several times about the conflict that caused his inability to obtain the factors necessary to apply for parole. Defendant Credit responded that Connecticut, the receiving state, would follow its own guidelines for classification. According to defendant Credit: "You [Mr. Reid] must be voted to parole by New Hampshire & they will not hear you until you participate in a [halfway] house. You cannot participate in a [halfway] house until you get to a level 2, which you cannot – no level reduction." (Complaint exhibit I.)

      The day after Christmas 2002, defendant Credit again responded to Mr. Reid's inquiry as to how he could obtain a level appropriate for parole eligibility. Again, the inescapability from the merry go round is evident: "New Hampshire would consider a level reduction (to 3) once you get a firm VTP [vote to parole] date. But you must be participating in a [halfway] house to be considered for parole. As CT manages you must be a level 2 to participate in a [halfway] house. You cannot be a level 2 under current guidelines. You cannot go to level 3 in CT due to agreement with New Hampshire and VTP reg." (See complaint exhibit K.)

      Thus, simply by virtue of Mr. Reid's incarceration in Connecticut he was denied the same rights as he would have possessed had he been incarcerated in New Hampshire. This unconstitutional scenario is true despite the fact that the Contract for the Implementation of the

Interstate Corrections Compact specifically guarantees Mr. Reid the same rights as he would possess if he were in New Hampshire. (See Defendants' Exhibit 10, Section 2, "Governing Law," wherein it specifically states that "the laws and administrative rules and regulations of the sending state shall govern in any manner relating to an inmate confined pursuant to this contract and the Interstate Corrections Compact.")

A case very similar to, if not on all fours with, that of plaintiff's is Carillo v. DuBois, 23 F. Supp 103 (D. Mass 1998). There, the plaintiff was a Rhode Island inmate serving a life sentence, and subsequently transferred to Massachusetts pursuant to the NEICC. According to Rhode Island law, an individual serving a life sentence is eligible for parole after serving ten years, and after obtaining housing at a minimum security facility. If plaintiff was housed in Rhode Island he would have been eligible to obtain housing at a minimum security facility. However, in Massachusetts, where plaintiff was incarcerated, an inmate serving a life sentence cannot obtain housing at a minimum security facility. Thus, plaintiff was unable to obtain the conditions necessary to apply for parole.

The Court found: (i) that plaintiff was denied equal protection as he was not treated like other Rhode Island inmates serving a life sentence; and (ii) plaintiff had a due process right in his eligibility for minimum security housing as it relates to parole eligibility. Here, the case is similar. Id. at 108-109.[3]

---

[3] The Carillo Court subsequently vacated the ruling upon a motion of the defendant due to the fact that the defendant did not have an opportunity to address the merits of the plaintiff's claims.

In Connecticut, to obtain eligibility to a halfway house an inmate must be a level two and within eighteen months of release. There was no chance for Mr. Reid to ever obtain level two status while incarcerated in Connecticut. He was therefore foreclosed from ever obtaining the conditions necessary to even apply for parole, let alone qualify for it. Thus, for no other reason than his incarceration in Connecticut was Mr. Reid prevented from ever obtaining the conditions precedent for a successful parole application.

The fact that the defendants followed Connecticut law instead of New Hampshire violated Mr. Reid's rights. Similar conflicts between state laws regarding the requirements of sexual offender registration per the state in which the conviction and sentence was issued and the state to which the person moved, has resulted in a recognition that more stringent requirements of the receiving state violate equal protection. Doe v. McVey, 381 F. Supp 443 (E. D. Penn. 2005); for one of the few overviews of these issues *see generally*, Wayne A. Logan, Horizontal Federalism In An Age of Criminal Justice Interconnectedness, 154 U. Pa. L. Rev. 257 (2005); see also, People ex rel. Crawford v. Department of Correctional Services, 329 N.Y.S.2d 7349 (2d Dept. 1972)(finding that Georgia parole board and regulations governed alleged parole violation of parolee who had parole transferred to New York from Georgia).

---

32 F. Supp 2d 35 (D. Mass. 1999) ("Accordingly, the orders in *Carillo I* are vacated insofar as they address the merits of the plaintiff's constitutional claims. The orders in *Carillo I* will stand, however, insofar as they granted the motion to dismiss the plaintiff's claims for damages. Those orders will also stand to the extent that they deny the motion to dismiss the plaintiff's claims for injunctive relief based upon the plaintiff's constitutional claims.")

### D. The Fact That Mr. Reid Would Never Be Eligible For A Halfway House While Incarcerated In Connecticut Poses An Atypical And Significant Hardship In Relation To The Ordinary Incidents of Prison Life

In <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995), the Supreme Court held that to establish a liberty interest for due process purposes an inmate must show that a rule or regulation poses an "atypical and significant hardship in relation to the ordinary incidents of prison life." Here, the test has been met.

Mr. Reid could do nothing to obtain the circumstances necessary for parole consideration as those circumstances were promulgated by the New Hampshire parole board. Indeed, defendant Credit specifically stated that Mr. Reid was ineligible for such programs, and would never be eligible no matter how he behaved while incarcerated. (See complaint exhibits G, I and K.) Instead, had Mr. Reid been incarcerated in New Hampshire he at least would have been able to obtain the prerequisites.

Therefore, Mr. Reid's incarceration in Connecticut, and the resulting ineligibility for work release, posed an atypical and significant hardship in relation to the ordinary incidents of prison life.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion be denied.

>
> RESPECTFULLY SUBMITTED
> THE PLAINTIFF
>
> BY:     /s/ Jim. Nugent /s/
>             Jim Nugent of Nugent & Bryant
>             Fed Bar No. CT 05792
>             236 Boston Post Road
>             Orange, CT 06477
>             Tel.  203-795-1113
>             Fax. 203-795-1019
>             Email. Jim@NugentLawyers.com

### **C E R T I F I C A T I O N**

I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

>
> BY:     /s/ Jim Nugent /s/
>             Jim Nugent of Nugent & Bryant
>             Fed Bar No. CT 05792
>             236 Boston Post Road
>             Orange, CT 06477
>             Tel.  203-795-1113
>             Fax. 203-795-1019
>             Email. Jim@NugentLawyers.com